**LOCAL 53 OF the INTERNATIONAL ASSOCIATION OF HEAT AND FROST INSULATORS AND ASBESTOS WORKERS, Appellant,**

v.

**Paul VOGLER, Jr., et al., Appellees.**

**No. 24865.**

United States Court of Appeals
Fifth Circuit.

Jan. 15, 1969.

Thomas J. Meunier, C. Paul Barker, Dodd, Hirsch, Barker & Meunier, Jerry L. Gardner, Jr., New Orleans, La., for appellant.

David L. Norman, Dept. of Justice, Washington, D. C., Barbara A. Morris, Robert L. Carter, New York City, Michael J. Molony, Jr., Revius O. Ortique, Jr., Hugh W. Fleischer, Atty., Dept. of Justice, New Orleans, La., Stephen J. Pollak, Asst. Atty. Gen., Nathan Lewin, Frank M. Dunbaugh, Attys., Dept. of Justice, Washington, D. C., for appellees.

Before DYER and SIMPSON, Circuit Judges, and CABOT, District Judge.

DYER, Circuit Judge:

Local 53 appeals from a temporary injunction entered against it, which prohibits the union's admitted discrimination in acts and policies of membership, referrals for employment, and training, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. We affirm.

The facts are relatively undisputed. Local 53 is a labor organization which is the exclusive representative in negotiating terms and conditions of employment for those engaged in the asbestos and insulation trade in southeastern Louisiana, including the metropolitan areas of New Orleans and Baton Rouge and some counties of Mississippi. Local 53 effectively controls employment and training opportunities in the asbestos and insulation trade in the area. It is by contract the exclusive bargaining agent for all asbestos workers employed by every major firm in that territory, and, in practice although not by contract, it operates a referral system at the union office through which it either furnishes or approves each journeyman and helper hired by asbestos contractors.[1]

In order to be admitted into Local 53 at the top rating of journeyman mechanic, the union requires that the applicant be a physically fit citizen under thirty years of age, obtain written recommendations from three members, and obtain the approval of a majority of the members voting by secret ballot at a union

---

1. Generally, workmen are sent to employers by the defendant [Local 53] in accordance with the fluctuating needs of the contractors in the area. When workmen are not available through the Union, contractors solicit men on their own but must send them to the Union before placing them on the job. Finding of Fact No. 3.

meeting. Additionally, the applicant must have had four years of experience as an "improver" or "helper" member of the union, but improver membership in the union is restricted to sons or close relatives living in the households of members.[2] Aside from the citizenship, age and physical fitness requirements, the union has imposed no qualifications or standards related to the trade upon persons seeking membership or referral for work.

Despite its dominance of employment and training opportunities in the asbestos trade and an increasing industry need for insulation tradesmen, Local 53 intentionally limited membership until by the time this action was instituted union members constituted less than one-fourth of the labor force in the industry. In the two years prior to the commencement of this suit the industry's labor needs had tripled,[3] yet in the four years prior to that time, Local 53 admitted but 72 improver members and no new mechanic members.[4] By the time of this suit, out of the 1,200 man insulation tradesman labor force of those contractors required by contract to recognize Local 53 as the exclusive bargaining agent for such employees, only 282, including 64 improvers, were actually members of Local 53.

In pursuing its exclusionary and nepotistic policies, Local 53 engaged in a pattern and practice of discrimination on the basis of race and national origin both in membership and referrals. It was found to be Local 53's practice to refer white persons of limited experience and white journeymen of other trade unions as mechanic asbestos workers. It was also found to be its practice to refuse to consider negroes or Mexican-Americans for membership and to refuse to refer negroes for employment or to accept negroes for referral for employment. This policy and various acts of discrimination, both prior to and after the effective date of the Civil Rights Act of 1964,[5] were admitted at trial and on this appeal.[6]

On February 25, 1966, March 9, 1966, and April 9, 1966, Paul M. Vogler, Jr., Juan Galaviz and Casimere Joseph, III, respectively filed complaints with the Equal Employment Opportunity Commission alleging that they had been denied membership in and referral for work

2. It is the policy of the defendant Local 53 to restrict its membership to the sons or close relatives of other members. Local 53 does not admit new men as mechanics, regardless of their qualifications. In the past four years the defendant has accepted 72 first-year improvers as members. Sixty-nine of these are sons or stepsons of members; each of the other three is a nephew who was raised by a member as his son. Only such sons are even considered for membership. Finding of Fact No. 4(f).

3. "In July of 1965, men affiliated with Local 53 worked a total of 58,690 hours; by November of 1966, that number had reached 160,548." Finding of Fact No. 4(c).

4. See note 2 supra.

5. Local 53 has more than 100 members and is engaged in the representation of employees of employers in an industry affecting commerce. Thus it was amenable to the Act on July 2, 1965. See 42 U.S. C.A. § 2000e(e).

6. Brief of Appellant Local 53:

At the time of the filing of this suit in November, 1966, there was [sic] on file with the union in excess of 200 applications for membership by white mechanic [sic] and improvers, some of which had been pending for more than ten years. In November and December, 1965, and January and February, 1966, seven (7) negroes applied for referral for employment as improvers or helpers. All were denied referral admittedly because they were negroes. Three (3) negroes, qualified members of the Plasterers Union, applied for referral for employment as mechanics in September, 1966, and were refused referral because they were negroes. At the time, the three individuals being members of the Plasterers Union were not seeking membership but only job referrals.

\* \* \* \* \*

Appellant \* \* \* acknowledges the existence of evidence warranting the propriety of an order prohibiting in forceful terms discrimination on the basis of race in referrals for employment and in admission to membership.

by Local 53 in violation of Title VII of the Civil Rights Act of 1964. On November 19, 1966, the EEOC found reasonable cause to believe that the violations had occurred but was unable to secure voluntary union compliance with the Act.

On November 25, 1966, Vogler, Galaviz and Joseph instituted this action in the District Court and on the same day filed a motion for a temporary restraining order, entered that day by the court,[7] and a preliminary injunction. On December 15, 1966, the United States filed a complaint under 42 U.S.C.A. § 2000e—5(a) and (b) alleging a pattern or practice of discrimination and a motion for a preliminary injunction. The two cases were consolidated, and following an evidentiary hearing the District Court on May 31, 1967, entered an injunction.

The injunction prohibits discrimination in excluding persons from union membership or referring persons for work; prohibits use of members' endorsements, family relationship or elections as criteria for membership; ordered that four individuals be admitted to membership and nine others be referred for work; ordered the development of objective membership criteria and prohibited new members other than the four until developed; and ordered continuation of chronological referrals for work, with alternating white and negro referrals until objective membership criteria are developed.

The union argues that the preliminary injunction has retrospective effect and penalizes the union for pre-Act discrimi-

natory policies in violation of the intent of Congress; that the injunction violates the Act's prohibitions against preferential racial treatment or establishing a quota system to correct racial imbalance; that the injunction is inconsistent with other Congressional labor legislation; and that the order exceeds the District Court's discretion by interfering with the scheme of the Civil Rights Act. The union also argues that despite its emphasis of the importance of this case and the necessity for guidance by this Court,[8] it should be permitted to withdraw its appeal, or alternatively that the appeal should be dismissed without prejudice, contending that little remains to be done and that future action could better be sought in the District Court by motion.

We agree with none of the union's contentions.

Local 53 admits that the evidence warrants "an order prohibiting in forceful terms discrimination on the basis of race in referral for employment and in admission to membership,"[9] and indeed it does, but the union apparently would limit any relief to a "forceful," but formless, order. If Local 53 wishes to read a forceful prohibition against discrimination, it need look no further than the Civil Rights Act itself.

Section 703(c) and (d) of the Act, 42 U.S.C.A. § 2000e—2(c) and (d), declares that it is an unlawful employment practice for a labor organization within the purview of the Act to discriminate on the basis of race or national origin in membership, employment refer-

7. The restraining order enjoined Local 53 from voting on any new members, tabulating any votes upon new members, or accepting any new members. The union had a meeting scheduled for that night at which 20 members were to be admitted from a ballot of 257 names, including the names of two negroes.

8. Brief of Appellant:
The proper adjudication and formulation of remedies in this case is important to the individuals the Government

and the defendant unions in guidance in compliance with the Act and their future survival as an agent protecting and promoting the rights of the laboring man. The newness of the statute and the uniqueness of its administration either through private suits or a governmental officer not normally concerned with labor problems make a clear mandate and directional guidance from this court imperative.

9. See note 6, supra.

rals or training programs,[10] and section 706(g), 42 U.S.C.A. § 2000e—5(g), authorizes appropriate judicial relief from unlawful discriminatory practices.[11] In formulating relief from such practices the courts are not limited to simply parroting the Act's prohibitions but are permitted, if not required, to "order such affirmative action as may be appropriate."[12] See United States v. Louisiana, E.D.La.1963, 225 F.Supp. 353, 393, aff'd, 1965, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709.[13] The District Court was invested with a large measure of discretion in modeling its decree to ensure compliance with the Act, Mitchell v. Robert DeMario Jewelry Co., 1965, 361 U.S. 288, 291, 80 S.Ct. 332, 4 L.Ed.2d 323; International Salt Co. v. United States, 1947, 332 U.S. 392, 400–401, 68 S.Ct. 12, 92 L.Ed. 20, and this Court will not interfere with that discretion except for an abuse thereof. United States v. Crescent Amusement Co., 1944, 323 U.S. 173, 185, 65 S.Ct. 254, 89 L.Ed. 160.[14] Where necessary to ensure compliance with the Act, the District Court was fully empowered to eliminate the present effects

10. Section 703 provides as follows:

(c) It shall be an unlawful employment practice for a labor organization—

(1) to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin;

(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's race, color, religion, sex, or national origin; or

(3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

(d) It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to discriminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

11. Section 706(g) provides as follows:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex or national origin or in violation of section 2000e—3(a) of this title.

12. Id.

13. Cf. also United States v. Loew's Inc., 1962, 371 U.S. 38, 83 S.Ct. 97, 9 L.Ed. 2d 11; United States v. United States Gypsum Co., 1948, 340 U.S. 76, 71 S. Ct. 160, 95 L.Ed. 89; International Salt Co. v. United States, 1947, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20; Hartford-Empire Co. v. United States, 1944, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322; United States v. Bausch & Lomb Optical Co., 1944, 321 U.S. 707, 64 S.Ct. 805, 88 L. Ed. 1024; Ethyl Gasoline Corp. v. United States, 1940, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852.

14. Cf. also Federal Trade Comm'n v. Colgate-Palmolive Co., 1964, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904; Phelps Dodge Corp. v. N.L.R.B., 1940, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271; Triple "AAA" Co. v. Wirtz, 10 Cir. 1967, 378 F.2d 884.

of past discrimination. United States v. Local 189, United Papermakers & Paperworkers, E.D.La.1968, 282 F.Supp. 39, 45; Quarles v. Philip Morris, Inc., E.D.Va.1968, 279 F.Supp. 505, 516. *See also* Louisiana v. United States, 1965, 380 U.S. 145, 154, 85 S.Ct. 817, 13 L.Ed.2d 709.

The District Court properly ordered the immediate admission into membership of four individuals, including three negro members of another union, Plasterers Local 93, and a Mexican-American, who had applied for and were refused consideration for membership in Local 53. The union contends that this was error because the three negroes had not applied for membership,[15] and because these individuals were refused membership for reasons other than race or national origin. Because we are bound by the District Court's finding, amply supported by the evidence, that the three negroes had been refused consideration for membership, the union's first attack fails. Rule 52(a), Fed.R.Civ. P. Neither is the second attack of avail to the union, because its exclusionary membership policies were invalid as applied to these individuals. We fully agree with the District Court's finding that the three negroes were refused membership solely because they are negro and that the Mexican-American equally effectively was denied membership because of his national origin. The same reasoning applies to the District Court's order that nine individuals be immediately referred for employment as first year as-

bestos helpers, as the union unlawfully discriminated against them following the effective date of the Civil Rights Act.[16]

In addition to rectifying Local 53's discriminatory admission and referral practices as applied to the thirteen individuals, the injunction ordered affirmative action to prevent future discrimination. The court ordered the development of objective, trade-related membership criteria and procedures, excluding as criteria relationship to or recommendation by present members or other persons employed in the trade, and excluding also any membership vote. The order additionally required Local 53 to objectively determine the size of its membership with reference to the number of skilled asbestos workers reasonably calculated to meet present and future industry needs in its geographic area. The order further provided for implementation of the criteria and procedures through a report by the union, an opportunity for objections to it, hearings, and an effective date, since extended. The injunction suspended the admission of new members until such objective criteria are developed.

The union asserts that it was error to eliminate its policy of excluding persons not related to present members by blood or marriage because it is a "penalty" for pre-Act discrimination and because it establishes a quota system to correct racial imbalance in violation of section 703(j) of the Civil Rights Act, 42 U.S.C.A. § 2000e—2(j).[17] We disagree.

15. *See* note 6 *supra.*

16. *See* note 7 *supra.*

In its Motion to Withdraw Appeal, Local 53 has assured this Court that it has complied with those portions of the injunction ordering it to admit or refer the thirteen individuals against whom it had discriminated. The union states that it "began effectuating compliance" by "offering" membership or referral to the named individuals. Because we are unsure from this terminology that there has been and will continue to be full compliance in this regard, we here expressly

affirm this portion of the injunction. *Cf.* Bailey v. Patterson, 5 Cir. 1963, 323 F. 2d 201, 205, cert. denied sub nom., City of Jackson v. Bailey, 1964, 376 U.S. 910, 84 S.Ct. 666, 11 L.Ed.2d 609.

17. Section 703(j) reads in pertinent part:
(j) Nothing * * * shall be interpreted to require any * * * labor organization * * * to grant preferential treatment to any individual or to any group because of the race * * * or national origin of such individual or group on account of an imbalance which may exist with respect

■ The District Court did no more than prevent *future* discrimination when it prohibited a continuing exclusion of negroes through the application of an apparently neutral membership provision which was *originally* instituted at least in part because of racial discrimination and which served no significant trade-related purpose. While the nepotism requirement is applicable to black and white alike and is not on its face discriminatory, in a completely white union the present effect of its continued application is to forever deny to negroes and Mexican-Americans any real opportunity for membership. *See* Ross v. Dyer, 5 Cir. 1963, 312 F.2d 191, 196; State Comm'n for Human Rights v. Farrell, 43 Misc.2d 958; 252 N.Y.S.2d 649 (1964). *See also* Quarles v. Philip Morris, Inc., E.D.Va.1968, 279 F.Supp. 505, 516, 518–519; United States v. Local 189, United Papermakers & Paperworkers, E.D.La.1968, 282 F.Supp. 39, 44–45. *See* M. I. Sovern, Legal Restraints on Racial Discrimination in Employment 181–82 (1966). In view of the general policies of racial discrimination in Louisiana, United States v. State of Louisiana, E.D.La.1963, 225 F.Supp. 353, 363–381, aff'd, 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709, and Local 53's admitted policy of racial discrimination both prior to and following the effective date of the Act, the union cannot salvage the invalidity of this requirement by *convincing* us that it did not arise at least in part from racial bases. Neither can Local 53 show retroactive application of the Act by superimposing its practices upon the facts of United States v. Sheet Metal Workers Int'l Ass'n, E.D.Mo.

1968, 280 F.Supp. 719. The district court in *Sheet Metal Workers* apparently held that because there was absolutely no evidence of acts of discrimination following the Civil Rights Act, a referral seniority system rewarding pre-Act employment from which Negroes were excluded is permissible. Regardless of the validity of the referral seniority systems involved there,[18] they are not analogous to the exclusion of negroes from an all white union by a system of nepotism. While the former might for a limited time operate to exclude negroes, the latter probably would do so interminably.

■ The requirements of Local 53 that applicants for membership obtain *recommendations from present members* and receive a favorable vote of a majority of its members were applied in a discriminatory manner, *see* Hawkins v. North Carolina Dental Soc'y, 4 Cir. 1966, 355 F.2d 718, 723; United States v. Logue, 5 Cir. 1965, 344 F.2d 290, 292–293; Hunt v. Arnold, N.D.Ga.1959, 172 F.Supp. 847, and hence it was permissible to eliminate them. It is immaterial that they were required by the union's constitution or contracts, as Congress under the Commerce Clause may invalidate private agreements. *See* J. I. Case Co. v. N.L.R.B., 1944, 321 U.S. 332, 337, 64 S. Ct. 576, 88 L.Ed. 762; Philadelphia, B. & W.R.R. Co. v. Schubert, 1912, 224 U.S. 603, 613–614, 32 S.Ct. 589, 56 L.Ed. 911; Louisville & N.R.R., Co. v. Mottley, 1911, 219 U.S. 467, 482–483, 31 S.Ct. 265, 55 L.Ed. 297. Neither did the District Court abuse its discretion by eliminating as a membership criterion work experience gained prior to the date of the in-

---

to the total number or percentage of persons of any race * * * or national origin * * * referred or classified for employment by any * * * labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race * * * or national origin in any community, State, section, or other area, or in the available work force * * *.

18. We express no opinion as to whether the elimination of either of the referral seniority systems in *Sheet Metal Workers* would constitute an abuse of discretion by retroactively penalizing pre-Act discrimination, by destroying "vested" seniority rights or by giving preferential treatment to negroes or whether either's use constituted a pattern or practice of discrimination violative of the Act.

junction. Until that date negroes were prevented from gaining such experience due to the union's racial discrimination, and this lack of experience would disadvantage them were pre-order experience allowed to be used. If a racially exclusionary practice originating from pre-Act discrimination cannot be *continued* following the Act, certainly such a racial disadvantage cannot be *instituted*.

 It is clear that by ordering Local 53 to develop objective criteria for membership, including a method by which union size based on industry need could objectively be determined, and by temporarily suspending admissions, the District Court did no more than ensure that the injunction against further racial discrimination would be fairly administered. Absent objective criteria regarding admissions and union size, covert subversion of the purpose of the injunction could occur. The same administrative reasons support alternating white and negro referrals, particularly in view of the union business agent's testimony that "every now and then" referral application forms tend to "run out." The court was authorized to "order such affirmative action as may be appropriate," 42 U.S.C.A. § 2000e—5(g), and nothing convinces us that it did not do so. In no manner did the injunction interfere with other labor legislation, usurp National Labor Relations Board jurisdiction, or constitute an abuse of discretion. *See* Local Union No. 12, United Rubber, C., L. & P. Wkrs. of America, A.F.L.–C.I.O. v. N.L.R.B., 5 Cir. 1966, 368 F.2d 12, 24.

 We view with a jaundiced eye Local 53's assertion that cessation of its illegal conduct is sufficient reason to allow it to withdraw this appeal. *Cf.* United States v. W. T. Grant Co., 1953, 345 U.S. 629, 73 S.Ct 894, 97 L.Ed. 1303. Therefore the motion to withdraw its appeal from the temporary injunction entered by the District Court is denied. The District Court's entry of a temporary injunction is

Affirmed.