**Albert CEDILLO, Plaintiff-Appellant,**

v.

**INT'L ASS'N OF BRIDGE & STRUCTURAL IRON WORKERS, LOCAL UNION NO. 1, et al., Defendants-Appellees.**

No. 78–2105.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1979.

Decided July 6, 1979.*

Rehearing Denied Aug. 1, 1979.

---

* This appeal was originally decided by unreported order on July 6, 1979. See Circuit Rule 35 (formerly Circuit Rule 28). The Court has subsequently decided to issue the decision as an opinion.

Thomas R. Meites, Chicago, Ill., Leopoldo Fraga, Jr., Washington, D. C., for amicus curiae—EEOC.

Thomas M. Crisham, Richard M. Stanton, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and PELL, Circuit Judges, and JAMESON, Senior District Judge.[**]

[**] The Honorable William J. Jameson, Senior District Judge of the District of Montana, is sitting by designation.

1. The Union's full name is International Association of Bridge and Structural Iron Workers, Local Union No. 1.

2. The Bridge and Structural Iron Workers Joint Apprenticeship Committee of Chicago is composed of equal numbers of representatives of

CUMMINGS, Circuit Judge.

This appeal arises from a judgment order entered pursuant to Federal Rule of Civil Procedure 54(b) which granted partial summary judgment in favor of Local Union 1[1] and which dismissed the Joint Apprenticeship Committee (JAC)[2] as a Rule 19 party in plaintiff's claim of discriminatory denial of union membership brought under the Civil Rights Act of 1866[3] and Title VII of the Civil Rights Act of 1964.[4] We reverse on the ground that partial summary judgment is inappropriate when plaintiff was denied all discovery relating to the impact of the applicable union membership rules. Accordingly, we remand to the district court in order to permit prompt resolution of the motion for class certification and to afford plaintiff a reasonable opportunity to engage in discovery. In addition, that portion of the district court order which dismissed the JAC is hereby vacated and the district court on remand should determine whether the JAC should be retained as a Rule 19 defendant.

## I

Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case demonstrate that, except as to the amount of damages, "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56(c). Because the question of the appropriateness of summary judgment must be decided upon the particular facts of the case, we shall set forth the facts underlying this litigation in some detail. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 259, 88 S.Ct. 1575, 20 L.Ed.2d 569.

Plaintiff Albert Cedillo, a Spanish-surnamed Mexican-American, was employed as the Local Union No. 1 and the contractors subject to a collective bargaining agreement with the Union. The JAC administers the apprenticeship program within the jurisdiction of Local Union No. 1.

3. 42 U.S.C. § 1981.

4. 42 U.S.C. § 2000e–5.

an ironworker in Corpus Christi, Texas, and was a member in good standing of Iron Workers 510, a sister to Local Union 1. After Cedillo moved to Chicago he applied for membership in Local Union 1 but his application was denied (R. 1). He continued to work for his employer under temporary work permits until December 1975 when the Union refused to renew his permit and his employer discharged him. Cedillo filed this action on behalf of himself and others similarly situated [5] alleging that the Union discriminated against Spanish-surnamed Mexican-Americans on the basis of their race and national origin by, *inter alia*, denying them transfer membership [6] into Local Union 1 from other Iron Workers Locals (Complaint ¶¶ 4, 7–9).

Local 1 moved for partial summary judgment as to the transfer membership claim on the basis of two affidavits. In both the president of the Union attested that since 1969 the Union has not accepted any new members except through its apprenticeship program or pursuant to the consent decree entered in *United States v. The International Association of Bridge and Structural Iron Workers Local Union No. 1*, No. 68 C 676 (N.D.Ill.1973) (R. 19).[7] A third affidavit subsequently was supplied in a supplemental motion for summary judgment. In this affidavit, the business representative of the Union stated that plaintiff was suspended on August 31, 1971, from membership in Local No. 510 for non-payment of dues and that this action rendered him ineligible for transfer membership into Local Union 1 (R. 35). Plaintiff's memorandum in opposition to summary judgment consist-

ed of an argument purporting to show that neither the facts alleged in the affidavits nor the recent government suit and resulting consent decree preclude plaintiff from securing the requested relief from the defendant.

The district court granted summary judgment, reasoning that "where the defendants have made *no selection of members from transfer applications at all*, no charge of disparate treatment can be sustained according to the prima facie requirement of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973)" (emphasis in original) (R. 52). The district court rejected defendants' claim that Cedillo is not eligible for transfer because he is not a member in good standing of his own Local. The court concluded that since Cedillo was "'at all times ready, willing and able to pay any past dues owing'", the lack of "good standing" was but a technical defect which could be easily remedied at the time of transfer. Of necessity, the district court also concluded that plaintiff's motion to compel the Union to answer proffered interrogatories be denied.[8]

## II

The party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor. The issue of material fact required to be present need not be resolved conclusively in favor of the party asserting its existence, but the movant need only show that sufficient evidence supporting the claimed factual dispute does not require

---

5. Plaintiff's motion to maintain the action as a class action has not been ruled upon by the district court.

6. The procedure for transfer membership is fully described in *Gavin v. Local One*, 553 F.2d 28, 30 n.2 (7th Cir. 1977).

7. The consent decree was entered in a government-initiated Title VII race discrimination suit against Local 1. The decree which expired in 1978 required the immediate admission of certain blacks but did not impose any restrictions on the Union's power to admit non-discriminatorily by transfer any other journeymen.

8. The plaintiff's first set of interrogatories to Local Union 1 was filed on March 25, 1977. Defendant Union filed answers to some of the questions, objections to others, and a motion for a protective order as to still others. In the motion for a protective order that defendant requested that it not be compelled to answer certain interrogatories until the motion for summary judgment had been disposed of. Plaintiff filed a motion to compel the Union to answer the interrogatories on April 26, 1978. A renewed motion to compel was filed on July 24, 1978. Both motions were continued generally until they were denied in the order granting partial summary judgment.

a jury or judge at trial to resolve the parties' differing versions of truth. All inferences to be drawn from the facts contained in the affidavits, exhibits, and depositions are to be drawn in favor of the non-movant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 153, 159–161, 90 S.Ct. 1598, 26 L.Ed.2d 142; *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 303, 305–307, 88 S.Ct. 1575, 20 L.Ed.2d 569; *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 468–469, 82 S.Ct. 486, 7 L.Ed.2d 458. Upon review of a summary judgment we are obliged to review the entire record in the light most favorable to the opponent of the movant. *United States v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176; *Hughes v. International Brotherhood of Teamsters, Local 683*, 554 F.2d 365 (9th Cir. 1977); *Moutoux v. Gulling Auto Electric*, 295 F.2d 573, 576 (7th Cir. 1961). Finally, as a general principle, questions of motive and intent are particularly inappropriate for summary adjudication. *Moutoux v. Gulling Auto Electric, supra*, at 576.

Cedillo argues that the district court erred in finding that "no genuine issue as to any material fact" exists as to his claim that the Union discriminated against him and other Mexican-Americans seeking membership through transfer. Primarily, he contends that the district court's failure to compel defendants to answer plaintiff's interrogatories which had been served upon them justifies the generality of the papers filed in opposition to the motion for summary judgment. He also argues, in sum, that the past conduct of the Union with respect to the employment of minorities in general, and an alleged nepotism involved in the administration of the apprenticeship program, the only other method by which the Union replenished its ranks, warrant a denial of summary judgment in this case.

The appropriate legal standard for "the order and allocation of proof" in a non-class action challenging employment discrimination was outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted):

"The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied[/] and was qualified for a job for which the employer was seeking applicants; (iii) that despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications."

In *United Brotherhood of Teamsters v. United States*, the Supreme Court made it clear that the required showing in a disparate impact case could not be inflexibly limited to any "discrete elements of proof" but would necessitate only that the plaintiff carry

"the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion under the Act." 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396.

The Union's argument on summary judgment was intended to meet plaintiff's prima facie case by establishing the existence of a legitimate non-discriminatory reason for the rejection of the plaintiff for membership which, in the absence of a showing that the proffered justification was "in fact pretext," would have been conclusive of the plaintiff's action. *McDonnell, supra*, 411 U.S. at 804, 93 S.Ct. 1817; see also *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); *Davis v. Weidner*, 596 F.2d 726 (7th Cir. 1979); *Taylor v. Philips Industries, Inc.*, 593 F.2d 783 (7th Cir. 1979).

▌ Under recent Supreme Court law it is clear that Title VII proscribes practices which are facially neutral but which in fact have a "disparate impact" on one group. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843; see *Local 53, Asbestos Workers v. Volger*, 407 F.2d 1047 (5th Cir. 1969). Defendants seek to use a dictum in the *Teamsters* case to argue that defendants simply made too few employment decisions to warrant a conclusion that there has been

a denial of equal access to any employment opportunity. 431 U.S. at 360, 97 S.Ct. 1843. However, on the state of the record before us we are unable to conclude as a matter of law that a blanket determination to limit all membership via a transfer program is incapable of an offensive disparate impact when members continue to be admitted through the apprenticeship program and when new employees continue to be hired through the temporary work permit program. Such a policy can "lock in" the effects of past discrimination and relegate qualified minorities to the status of non-vested, temporary permit workers. See *Gibson v. Local 40, Supercargoes & Checkers*, 543 F.2d 1259 (9th Cir. 1976); *United States v. Local 638, Steamfitters*, 347 F.Supp. 169, 181 (S.D.N.Y.1972), affirmed and remanded on other grounds *sub nom. Rio v. Steamfitters, Local 638*, 501 F.2d 622 (2d Cir. 1974). Our conclusion is particularly influenced by the effective denial of plaintiff's requests to obtain the discovery of statistical data needed to establish fully his claim of the disparate impact of the ostensibly neutral exclusions. See *Toebelman v. Missouri Kansas Pipe Line Co.*, 130 F.2d 1016 (3d Cir. 1942); *Penn Galvanizing Co. v. Lukens Steel Co.*, 59 F.R.D. 74, 80 (E.D.Pa.1973). The dissent considers pivotal the failure of the plaintiff to contravene the "fact" that the Union had admitted no transfer members at all during the relevant time period. However, we view the plaintiff's case as not requiring that he oppose that fact but rather that he substantiate the inference which he contends can be drawn from it. In addition, where the need for discovery in order to obtain the requisite statistical data to substantiate the claims asserted is clear, and where plaintiff was effectively denied the opportunity to engage in that discovery, we hold that entry of summary judgment is inappropriate. Thus the judgment must be reversed and this case remanded for prompt determination of class certification and for discovery to proceed in order to afford plaintiff "a

fair opportunity to show that [the employer's] stated reason for [the employee's] rejection was in fact pretext." *McDonnell, supra*, 411 U.S. at 804, 93 S.Ct. at 1825.

## III

The district court also dismissed the JAC as a party defendant. Plaintiff argues on appeal that the JAC should remain in the case since a possible individual or class remedy, required in order to preserve the balance in the unionized work force, could entail the Union's reduction of the number of workers admitted through the apprenticeship program. We agree that if the Union's no-transfer policy is found to be discriminatory, the JAC as administrator of the apprenticeship program will be a party "in whose absence complete relief cannot be accorded to those already parties." Federal Rule of Civil Procedure 19(a). Tangentially, we also conclude that plaintiff's change in position on this issue [9] does not preclude this Court from concluding that the JAC's absence from this action might impede implementation of the district court order ultimately entered. Thus we vacate the district court order which dismisses the JAC as a party defendant. The district court on remand shall determine whether the JAC should be retained as a defendant, particularly in the light of the resolution of the motion for class certification and the ultimate determination of the shape of the wrong to be remedied.

Accordingly, the order granting partial summary judgment in favor of defendants is reversed and remanded to the district court with directions.[10]

PELL, Circuit Judge, dissenting.

Being of the opinion that the district court properly granted partial summary judgment for the reasons stated in its memorandum opinion and order, I would adopt that memorandum opinion and order as the opinion of this court, and affirm the partial summary judgment. Accordingly, I respectfully dissent.

9. Plaintiff originally opposed joinder of the JAC but the district court overruled his objections in ordering plaintiff to amend his complaint to join the JAC as party-defendant (R. 12).

10. Since there was no trial below, Circuit Rule 18 does not apply.

I note particularly that the plaintiff did not contravene by affidavit that the union has admitted no transfer members *at all* during the period in question. The policy apparently is applied uniformly as to all ethnic and racial groups. Any such group could claim it was thereby precluded but it would have to share such claim with all other groups. I also note that the district court "reluctantly" agreed with the union that it made too few employment decisions to justify the inference that it had engaged in a regular practice of discrimination. The plaintiff had his opportunity to deny this but did not avail himself of the opportunity.

The majority order in referring to this dissent, in effect, admits that for purposes of summary judgment the plaintiff did not contravene the fact that since 1969, the time of the arrival of plaintiff in Chicago, the union had admitted no members whatsoever on transfer. All new members had come through the apprenticeship program, which is not asserted to be discriminatory toward plaintiff's racial group, or by virtue of a consent decree in *United States v. International Association of Bridge and Structural Ironworkers Local Union No. 1*, No. 68 C 676 (N.D.Ill.1973). The majority order then states that it views plaintiff's case as not requiring this contravention but rather that he has to "substantiate the inference which he contends can be drawn from it."

I fail to see what inference can be drawn from this undisputed fact relevant to the pertinent period during which he claims discrimination. The International had amended its constitution in 1968 providing for discretion to be exercised as it has been here. *See Gavin v. Structural Iron Workers Local No. 1*, 553 F.2d 28, 31 (7th Cir. 1977). Uniformly transfers were denied, and I agree with the district court which said:

> Where the defendants have made *no selection of members from transfer applications at all*, no charge of disparate treatment can be sustained according to the prima facie requirement of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See also *Furnco Construction v. Waters*, 438

U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). [Emphasis in the original.]

Unfortunately, it appears to me, that the majority result permits the litigant to by-pass required procedure if he is to avoid summary judgment against him. The broad, sweeping information that the plaintiff sought by interrogatories related to times far earlier than that which was pertinent here. As to the pertinent period of time there was no dispute because the defendant union's affidavit was not countered. If the plaintiff is locked in a situation, he shares that situation with every other would-be transferor, irrespective of such person's race, sex, nationality, or color.

I cannot conceive that the across-the-board preclusion practiced here would be the basis for an inference that it was directed at what is not shown to be other than a quite small minority group. *Cf. Personnel Administrator of Massachusetts v. Feeney*, —— U.S. ——, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979).