Charles N. PEASE, Plaintiff,

v.

Gary L. CLAYTON, individually and as Director of the Department of Registration and Education, David S. Fox, individually and as Chairman and Member of the Medical Examining Committee, Paul Tullio, individually and as Secretary and Member of the Medical Examining Committee, Robert A. Behmer, Kenneth Egen, Lawrence L. Hirsch, Robert P. Johnson and Larry S. Patton, individually and as Members of the Medical Examining Committee, Defendants.

No. 82 C 3914.

United States District Court, N.D. Illinois, E.D.

Feb. 10, 1983.

Sally Y. Mengo, Arnstein, Gluck & Lehr, Chicago, Ill., for plaintiff.

Michael T. Mullen, Asst. Atty. Gen., Special Litigation Div., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Charles Pease ("Pease") brought this action against Gary L. Clayton, Director of the Department of Registration and Education ("the Department") and members of the Medical Examining Committee ("the Committee"), alleging that by placing his license to practice medicine in a non-renewed status, defendants violated his constitutional rights of equal protection and due process. Plaintiff seeks damages and injunctive relief pursuant to 42 U.S.C. § 1983 and seeks declaratory relief pursuant to 28 U.S.C. § 2201.[1] The matter is presently before the Court on defendants' motion to dismiss and plaintiff's motion for preliminary injunction.

### I.

Defendants originally moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). As the two motions now before the Court were briefed, however, it became clear that there are no genuine issues of material fact, and that a motion for summary judgment pursuant to Fed.R.Civ.P. 56 would have been appropriate. *Cedillo v. International Association of Bridge and Structural Iron Workers, Local Union No. 1,* 603 F.2d 7, 10 (7th Cir.1979). In their final brief on the motion to dismiss, defendants suggest that we treat their motion as one for summary judgment.

Conversion of a motion to dismiss into a motion for summary judgment is appropriate when the court determines that there are no triable issues of material fact. *Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 390 (7th Cir.1981), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119 (1981). Although the general rule is that a district court should not convert a motion to dismiss into a motion for summary judgment without providing notice to the parties and an opportunity for them to present affidavits and other evidence, *see Coldwell Banker & Company v. Karlock,* 686 F.2d 596, 604 (7th Cir.1982) and *Milwaukee Typographical, supra,* we believe that this case is an appropriate exception to the rule. In this case, as in *Coldwell Banker* and *Milwaukee Typographical,* there are no issues of fact in dispute, and both sides have submitted affidavits, documents and other evidence outside the pleadings in support of their respective motions, in effect inviting conversion.[2]

---

**1.** Jurisdiction is based upon 28 U.S.C. §§ 1331 and 1343(a)(3).

**2.** We note that the standard for a preliminary injunction includes likelihood of success on the merits. *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb, Inc.,* 698 F.2d 862,

We therefore will consider defendants' motion as one for summary judgment. For the reasons set forth below, defendants' motion will be granted.

## II.

The undisputed facts are set forth as follows. In 1978, the Department adopted a new rule regarding continuing education requirements for licensed physicians pursuant to its power under § 5.1 of the Medical Practice Act ("MPA"), Ill.Rev.Stat. ch. 111 ¶ 4412. This rule, Rule XI of the Rules and Regulations Promulgated for the Administration of the Illinois Medical Practice Act ("Rule XI"), requires, *inter alia,* that a physician earn 100 credit hours of Continuing Medical Education ("CME") during each two-year license renewal period. At least twenty of these hours must be earned by attendance at formal education programs certified for CME by the American Medical Association.

Rule XI provides an exception to the twenty-hour formal CME requirement for physicians practicing in localities lacking formal CME opportunities. The rule also provides that if "good cause" is shown, *i.e.* illness, incapacity, undue hardship or other extenuating circumstances, an extension of time within which to fulfill the requirements may be granted.

Pease, a physician licensed to practice in the State of Illinois since 1923, wrote in April of 1981, advising the Department that he was physically disabled and requesting a waiver of the twenty-hour formal CME requirement. Clayton, as Director of the De-

partment, informed Pease by letter dated July 13, 1981, that his request was denied. Pease was instructed that he must comply with the 100 credit hour CME requirement in order to renew his license.[3]

In February, 1982, Pease sent a letter and affidavit to Clayton setting forth his physical disabilities and requesting a waiver of, or indefinite extension of time within which to fulfill, the CME requirements. Clayton advised Pease by letter in March, 1982, that Pease was scheduled for an interview before the Committee on April 14, 1982, and that he should contact Committee Liaison Eileen Brown ("Brown") if he could not attend. Pease notified Brown by letter that he could not attend the interview due to his physical disabilities, but that he could attend an interview at his home and would provide the Committee with any additional information it needed.

Clayton advised Pease by letter in late April that, despite Pease's inability to attend the meeting, the Committee had considered Pease's request for waiver on April 14, 1982, and had recommended that it be denied. As a result of this recommendation, Pease's license was placed on non-renewed status.[4] Pease complains that because of the status of his license he is prevented from practicing medicine and is deprived of income therefrom.[5]

## III.

Pease contends that his constitutional rights were violated in three ways: (1) the renewal requirement of twenty hours of formal CME discriminates against the class

864 (7th Cir.1983). In support of his motion for preliminary injunction, plaintiff has submitted documentation in support of his position on the merits; thus, the court's attention was directed outside the pleadings by the plaintiff as well as the defendant.

3. Defendants point out that a distinction exists between terminating or revoking a physician's license and placing the license on non-renewed status. A non-renewed license may be reactivated within five years of its non-renewal upon fulfillment of the requirements, while termination or revocation is a final action.

4. At the hearing on plaintiff's motion for preliminary injunction in late August, 1982, this Court suggested that the motion (and defendants' motion to dismiss) be held in abeyance and that defendants grant Pease a hearing on his waiver request. On September 8, 1982, defendants interviewed Pease at his home, and later that day again denied his request.

5. Pease himself describes his practice at the time of his non-renewal as extremely limited, consisting mainly of rendering opinions as a consultant for attorneys and other physicians and seeing one to two patients a week for diagnosis and referral.

of physicians who are physically unable to attend formal programs and thus violates the Equal Protection Clause of the Fourteenth Amendment; (2) the Department's failure to abide by the statutory notice requirements applicable to disciplinary actions violates the Due Process Clause of the Fourteenth Amendment; and (3) the absence of a right-to-hearing provision in Rule XI violates the Due Process Clause.

## A. Equal Protection

Plaintiff contends that Rule XI creates two classes: the class of physicians who are physically able to attend formal CME programs and the class of physicians who are physically unable to attend such programs. He argues that the requirement of twenty hours of formal CME programs every two years discriminates against the latter class, of which he is a member.

■ Unless the legislation in question burdens a suspect group or fundamental interest, it will not be overturned on equal protection grounds unless the varying treatment of different groups or persons is not rationally related to a legitimate state interest. See Vance v. Bradley, 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979); San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

■ In the instant case, plaintiff has not alleged that he is a member of a suspect group, nor that a fundamental right has been burdened. The requirement contained in Rule XI is rationally related to the state interest in insuring competent, up-to-date health care. Moreover, the classifications described by plaintiff do not appear on the face of Rule XI; at best, the alleged discriminatory effect is remote and indirect. The prohibition of the Equal Protection Clause goes no further than invidious discrimination. Williamson v. Lee Optical of Oklahoma, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). We therefore reject plaintiff's equal protection claim.[6]

6. For the same reasons, we reject plaintiff's claim, similar to his equal protection argument but couched in substantive due process terms,

## B. Due Process

■ Pease next contends that the Department's failure to accord him notice and a hearing was a violation of his procedural due process rights. As this Court has stated, the initial inquiry with respect to allegations of a deprivation of due process must concern whether the actions complained of infringe or implicate an interest accorded by either state or federal law. Johnson v. Brelje, 521 F.Supp. 723, 725 (N.D.Ill.1981). Plaintiff in this case alleges that by placing his medical license on non-renewed status, defendants deprived him of his property interest in practicing medicine. Where a statute, ordinance or contract has conferred a legitimate expectation of continued employment, the Supreme Court has, in various contexts, recognized a property interest worthy of due process protections. See, e.g., Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Even assuming that plaintiff's interest in a renewed medical license rises to the level of a protectible property interest, however, we hold that plaintiff was accorded all the procedural protections to which he was entitled.

Plaintiff makes two arguments in support of his contention that he was not afforded due process. He first argues that his procedural rights were violated when the Department did not comply with the notice and hearing requirements of § 17.01 of the MPA, Ill.Rev.Stat. ch. 111 ¶ 4440. Section 17.01 provides, inter alia, that before suspending, revoking, placing on probationary status or taking any other disciplinary action that the Department may deem proper with respect to any license, the Department must notify the licensee in writing of any charges made, notify him thirty days in advance of the time and place of a hearing to consider the charges and direct him to file a written response in twenty days or face default.

that the MPA as applied to him is "arbitrary, unreasonable, capricious and unrelated to plaintiff's competency to practice medicine."

Plaintiff's reliance on § 17.01 is misplaced. Section 17.01 does not address actions taken due to failure to meet basic licensing requirements, but instead addresses disciplinary actions taken with respect to licenses. The distinction is significant in terms of the degree of process due. In a disciplinary action, notice and a hearing are necessary to inform the licensee of charges asserted against him and accord him an opportunity to clear himself of unfounded allegations. Licensing requirements, on the other hand, are clearly set out in advance, and when the licensee admits to having not met them, notice and a hearing are not as imperative. We therefore reject plaintiff's attempt to apply the procedural requirements of § 17.01 to his situation; neither the language of nor the rationale underlying § 17.01 lends itself to licensing requirements and renewal.

Pease next argues that the absence of a provision in Rule XI ensuring a right to a hearing on waiver requests renders the CME requirements procedurally deficient and thus unconstitutional. We disagree. As the rule was administered in plaintiff's case, ample procedural safeguards were effected. Pease himself initiated the waiver request, so there is no question that he knew a decision affecting the status of his license was pending. He was given the opportunity to submit an affidavit and other documents in support of his request. The Department, at plaintiff's request, twice reconsidered its decision denying the waiver. Before the Department initially reconsidered its decision, a hearing was scheduled and plaintiff notified. Plaintiff's response to notice of a hearing date was that he could attend no hearing outside his home. Before the Department reconsidered its decision a second time, plaintiff was interviewed at his home. Especially in light of the fact that the Department's decision did not finally terminate plaintiff's license but placed it on non-renewed status pending Pease's fulfillment of the State's licensing requirements (*see* p. 701, n. 3, *supra*), the procedural safeguards afforded plaintiff were constitutionally sufficient.

For the reasons discussed above, summary judgment is entered in defendants' favor.[7] It is so ordered.

---

**7.** Because of this ruling, we need not consider plaintiff's motion for preliminary injunction.