**Hubert LAPPE and Carla Chenelle Lappe d/b/a Chenelle Lappe Associates, Plaintiffs,**

**v.**

**PARKER BROTHERS DIVISION OF GENERAL MILLS FUN GROUPS, INC., now by change of name CPG Products Corp., Defendant.**

**No. 77 C 1303.**

United States District Court, N.D. Illinois, E.D.

July 28, 1983.

Marvin N. Benn, Marvin N. Benn & Associates, Ltd., George W. Hamman, Hamman Benn & Miller, Chicago, Ill., for plaintiffs.

---

Oliver P. Howes, Jr., Nims, Howes, Collison & Isner, New York City, Dean A. Olds, Hume, Clement, Brink, Willian & Olds, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiffs, Hubert Lappe and Carla Chenelle Lappe, doing business as Chenelle Lappe Associates, brought a nine count complaint against the defendant, Parker Brothers. The allegations against the defendant are: Count I, attempting to monopolize the board game market; Count II, intentional interference with plaintiffs' reasonable business relationship expectations; Count III, intentional infringement of plaintiffs' trademark rights; Count IV, violation of the Illinois Deceptive Trade Practices Act, Section 312; Count V, registration of a trademark confusingly to plaintiffs' trademark; Count VI, violation of Illinois Trade-Mark statute, Ch. 140 §§ 24 and 25; Count VII, dilution of plaintiffs' trademark and injury to plaintiffs' business; Count VIII, violation of the Illinois Trade-Mark statute, Ch. 140 §§ 19 and 20, and Count IX, violation of the United States Copyright Statute. The defendant denied that it infringed plaintiffs' rights or violated any statute. Defendant asserted various affirmative defenses and counterclaimed for a declaration that plaintiffs' alleged trademark is invalid because it is non-distinctive, descriptive, and incapable of functioning as a trademark.

After over two years, the parties completed discovery and filed their Final Pretrial Order with the Court. This order outlined contested and uncontested issues and listed the witnesses and exhibits to be introduced at trial. In this Order, the plaintiffs waived their claims stated in Count IX of the complaint. Counts V and VIII have previously been dismissed from the action. Defendant waived the affirmative defenses it had raised against the dismissed counts.

The case is presently before the Court on the defendant's motion for summary judgment on the remaining counts. For the reasons stated herein, the defendant's motion is granted.

### The Plaintiffs' Game

In March, 1976, the plaintiffs, who are truck drivers by profession, developed a board game designed to capitalize on the C.B. radio fad which was then in vogue. The plaintiffs made a token sale in interstate commerce of a prototype of the game on April 10, 1976. This prototype bore the legends CONVOY in large lettering and, to identify the genre of the game, 10–4 TRUCKERS C.B. RADIO GAME in smaller letters.

In April, 1976, plaintiffs hired Stanley Abramson of Priority Marketing Communications to handle the production, marketing and sale of plaintiffs' game. Mr. Jack Spence was placed in charge of distribution. Both of these individuals had extensive marketing experience. Two thousand (2000) games were produced by mid-June and 12,500 promotional selling or catalogue sheets were prepared. Plaintiffs claim that 1500 games had been sold by mid-July. *See*, Appendix I. The plaintiffs went out of business in mid-August, 1976, allegedly because of defendants conduct in the market.

### The Defendant's Game

The defendant's game was conceived by two housewives doing business as "Two Game Girls." The game, originally entitled "Bear In the Air," was also designed to take advantage of the C.B. radio craze. The game was presented to Parker Brothers on May 11, 1976. Parker Brothers was licensed by the Two Game Girls to manufacture, distribute and sell the game.

On June 24, 1976, the defendant issued a sales kit to its sales force and told them to immediately begin soliciting orders. Each sales person was sent a sample of the game, which Parker Brothers had entitled 10–4 GOOD BUDDY, on July 12, 1976, for

use in promoting the game.[1] The sales materials indicated that shipment of the game would begin in September, 1976. Parker Brothers' sales records show that by September 26, 1976 over 87,000 games had been shipped. *See,* Appendix I. Re-orders were very slow, and defendant ceased to offer its game by the end of 1978.

### Other Manufacturers

Both parties have admitted that there were other games on the market in mid to late 1976, which used the C.B. radio, truck drivers theme. By the first week of August, 1976, Milton Bradley was offering a C.B. radio game entitled BREAKER 19. This game was marketed in the same manner as the Parker Brothers game, that is a sales kit was sent to the sales force which indicated that the game would be ready for shipment by August 31, 1976.

Three smaller companies also had developed a C.B. radio game. Two of these used the phrase 10–4 in the game title. These games were offered during this same time period with varying degrees of commercial success and failure.

### Motion for Summary Judgment—Fed.R. Civ.P. 56

■ The party moving for summary judgment has the burden of clearly establishing that there is no genuine issue of fact which is material to a judgment in his favor. *Cedillo v. International Association of Bridge and Structural Iron Workers,* 603 F.2d 7, 10 (7th Cir.1979). While the non-moving party is entitled to have all reasonable inferences from the facts contained in the affidavits, exhibits and depositions drawn in his favor, *id.,* it may not merely rely on the allegations in its pleadings. The non-moving party must affirmatively set forth specific facts in affidavits or otherwise showing that there are issues that must be decided at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The non-moving party cannot create an issue of material fact through conjecture or speculation as to what evidence might be adduced at trial or what might be turned up by further discovery. *Abiodun v. Martin Oil Service, Inc.,* 475 F.2d 142, 144 (7th Cir.), *cert. den.,* 414 U.S. 866, 94 S.Ct. 57, 38 L.Ed.2d 86 (1973). The summary judgment procedure has been called a drastic measure however, as noted by the Seventh Circuit Court of Appeals, "[w]ith the ever increasing burden upon the judiciary, persuasive reasons exist for the utilization of summary judgment procedure wherever appropriate." *Kirk v. Home Indemnity Co.,* 431 F.2d 554, 560 (7th Cir.1970).

The defendant has supported its motion for summary judgment with affidavits, deposition testimony and exhibits, admissions, and interrogatory responses. The Court has the benefit of the final pretrial order and the parties' list of contested and uncontested facts. In response, the plaintiffs filed an affidavit, and referred to deposition testimony and exhibits. After careful review of these materials, the Court finds that there is no genuine issue of fact, material to judgment, which necessitates this case going to trial. The defendant's motion for summary judgment is granted as to the Section 2, attempt to monopolize claim and the federal Lanham Act claims. Under the doctrine of pendent jurisdiction, *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) plaintiffs' state law claims are dismissed for lack of jurisdiction.[2]

---

1. The parties disagree as to whether the sample was in final form or whether the final product was significantly different from the sample. This is not sufficient to raise a question of fact, because even if the sample was modified it would not be reasonable to infer that the sample was issued with the intent to attempt to monopolize the board game market.

2. Although this Court has found that it does not have jurisdiction to hear the claims raised by the plaintiffs under state law, the Court notes that these claims are essentially the same as the federal antitrust and Lanham Act claims. There are no genuine issues of material fact raised in these claims.

As will be indicated, the plaintiffs have not shown that there are any facts which support an

### Section 2—Attempt to Monopolize

Count I of the complaint alleges that defendant has violated Section 2 of the Sherman Act by attempting to monopolize the board game market.[3] The complaint alleges specific acts which, plaintiffs claim, defendant undertook for the purpose of excluding competition from this market. Defendant contends that no genuine issues of material fact exist and that as a matter of law it is entitled to summary judgment in its favor on this count. The Court agrees.

■ In order to prove an attempt to monopolize under Section 2, plaintiffs must show that defendant has a specific intent to monopolize the relevant market and that there is a dangerous probability that the defendant will succeed. *Swift & Co. v. United States*, 196 U.S. 375; 25 S.Ct. 276, 49 L.Ed. 518 (1905). Specific intent can sometimes be inferred from predatory business practices. *Lektro-Vend Corp. v. Vendo Co.*, 660 F.2d 255, 272 (7th Cir.1981). However, for such an inference to be drawn, the plaintiffs must show that the practices were in fact predatory, purposefully anticompetitive, and not motivated by a legitimate business purpose. *Id.* Plaintiffs have failed to show that Parker Brothers' actions were not taken for the sound business purposes stated by Parker Brothers in the materials supporting this motion.

■ As indicated in the above statement of facts, both parties to this litigation, as well as other competitors in the game market, were seeking to capitalize on a fad. By definition, the appeal of a faddish product is short-lived. Both parties were under the added time pressure of introducing their games in time for the Christmas buying season. The normal procedure followed by game manufacturers for the introduction of their products in the market is not relevant given these market conditions.

Plaintiffs assert various facts in their complaint and ask that the Court infer from these facts that the defendant was intending to monopolize the board game market and took these actions in furtherance of this intention. Specifically, plaintiffs complain that defendant copied plaintiffs' game, solicited orders from retailers before the game was in final form, and indicated to retailers that shipment would begin in September but in fact failed to ship until November. The record does not support plaintiffs' allegations. There is no evidence that defendant copied the plaintiffs' game. As the parties admit, there were a number of game manufacturers seeking to capitalize on the C.B. radio craze, who were introducing games into the market at this time. Plaintiffs have not specifically refuted the evidence that defendant was licensed by the developers of the game it marketed under the name 10–FOUR, GOOD BUDDY to sell and distribute the game. Further, any similarities between the two games is explained by the fact that both adopted the same general C.B. radio theme.[4]

---

allegation of Lanham Act violation and the tests for state trademark law infringement are very similar to the federal law. These facts also fail to raise an issue on the dilution claim. Further, the record does not support a claim of intentional interference with reasonable business relationship expectations. Plaintiffs allege the same facts in this claim as they do in their Section 2 claim, without any proof that the defendant's conduct complained of was motivated by anything other than a legitimate business purpose.

3. Plaintiffs have presented no proof on the relevant market. Rather, the complaint alleges that board games is the relevant market and the memorandum in opposition to this motion, the plaintiffs conclusively state that family games

or children's games is the relevant market. For the purpose of the motion, the Court will consider board games as the relevant sub-market even though, under the "cross-elasticity of demand" test of *United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956), it does not appear that plaintiffs could prove that board games is a relevant sub-market. It appears that all games define the relevant market.

4. The plaintiffs have withdrawn their claim of copyright infringement. However, the Court notes that under the Copyright Statute, 17 U.S.C. §§ 101 *et seq.*, the plaintiffs cannot monopolize a game idea, only the specific representation of that game idea. *See, Atari, Inc. v. North American Philips Consumer Electronics Corp.*, 672

Defendant's use of a sales kit was a sound business practice given the market situation at that time. It would not have been a wise business action for the promotion of a faddish product to wait until the game was in final form before beginning solicitation of orders. Further, defendant was in the process of completing the game's format and preparing to begin production. Thus, it is not reasonable to infer that the defendant's use of a kit was done to unfairly compete with the plaintiffs. Finally, it cannot be said that defendant's failure to meet a self-imposed shipping deadline constitutes a violation of the antitrust laws. One cannot reasonably infer that defendant set the deadline in an attempt to monopolize the board game market. In any event, defendant's shipment records indicate that initial shipments were made in the month of September.

Plaintiffs make several assertions in their memorandum filed in the response to this motion which, they contend, show that an issue of fact exists in the Section 2 claim. In essence the plaintiffs claim that, because Parker Brothers tried to get their game out as fast as it could, because it did not follow the usual industry practice for the introduction of new games, because the defendant mailed a flyer to customers before the game was in production and because Parker Brothers had a poor shipping record, the Court must necessarily conclude that Parker Brothers was attempting to monopolize the board game market. As stated above, it is not reasonable to infer that defendant was motivated by anything other than a legitimate business purpose. Plaintiffs have submitted no evidence to support their claim that the defendant specifically intended to monopolize the volatile board game market.

Plaintiffs have also failed to show that there is a genuine issue of material fact as to whether there is a dangerous probability that the defendant would succeed in an attempt to monopolize the board game market. Milton Bradley is the leading manufacturer of board games, and the defendant is second. These two companies *together* do *not* control 50% of the market.[5] Numerous smaller companies are in the market, many marketing only one or two games successfully. No dangerous probability of monopolization exists in this market. *See, United States v. U.S. Steel Corp.*, 251 U.S. 417, 40 S.Ct. 293, 64 L.Ed. 343 (1920) (one firm's control of 50% of market insufficient to prove monopoly power), *United States v. International Harvester Co.*, 274 U.S. 693, 47 S.Ct. 748, 71 L.Ed. 1302 (60% of market insufficient to prove market power), *Central Chemical Corporation v. Agrico Chemical Co.*, 531 F.Supp. 533 (D.Md.1982) (27% market share insufficient for showing of attempt to monopolize.)

Plaintiffs have failed to show that there exists a genuine issue of material fact on the issue of the defendant's attempt to monopolize the board game market. Accordingly the defendant's motion for summary judgment on Count I of the complaint is granted.

*Lanham Act—Trademark Infringement*

■ Plaintiffs assert that 10–4 TRUCKERS C.B. RADIO GAME, as it is used on their game packaging, is a valid trademark and is infringed by the defendant's use of 10–FOUR, GOOD BUDDY. As in antitrust cases, summary judgment in trademark cases is not favored. *Albert Dickinson Co. v. Mellos Peanut Co.*, 179 F.2d 265, 270 (7th Cir.1950). However, it is equally clear that if no valid issue of fact remains, it is proper to grant summary judgment, and thereby avoid a useless trial.

---

F.2d 607 (7th Cir.1982). Similarity between the game ideas would not infringe any of plaintiffs' rights.

**5.** This figure is an approximation because the plaintiffs did not submit market figures for the board game market. This percentage is taken from a report prepared for the defendant, which considered the family game market. It does indicate the number of manufacturers distributing games in competition with the defendant and Milton Bradley. Plaintiffs have not presented any evidence which suggest that small competitors cannot survive in this market.

*Standard Pressed Steel Co. v. Midwest Chrome Process Co.,* 418 F.Supp. 485, 490 (N.D.Ill.1976).

 Defendant argues that the name of plaintiffs' game is CONVOY and that the legend 10–4 TRUCKERS C.B. RADIO GAME is a descriptive phrase and does not function to identify plaintiffs as the source of the game. Plaintiffs respond that the phrase does function to identify the source of the game and does not merely describe the goods, a board game. As noted in the above Statement of Facts, the designation CONVOY appears on the plaintiffs' game in addition to the phrase at issue, and appears on the plaintiffs' game in print roughly ten times the size of 10–4 TRUCKERS C.B. RADIO GAME. This phrase is always used in conjunction with CONVOY, either printed below or to the side of the larger sized caption.

As noted by the defendant, it is clear that the plaintiffs considered CONVOY to be the name and designation of the game's source. An application to register CONVOY as a federal trademark was filed in May of 1976. The application to register 10–4 TRUCKERS C.B. RADIO GAME as a trademark was not filed until a month after the plaintiffs claim to have ceased business allegedly because of the defendants conduct. All bills and invoices for the game refer to it only as CONVOY. Third parties identified the game as CONVOY. The only evidence in the record identifying the game 10–4 TRUCKERS C.B. RADIO GAME is self-serving at best.

Because it has found that the plaintiffs designation is not a valid trademark, it is not necessary for the Court to reach the issue of trademark infringement. However, it is clear that even if the plaintiffs were using a valid trademark, summary judgment could be granted on the issue of likelihood of confusion. The two trademarks, CONVOY 10–4 TRUCKERS C.B. RADIO GAME and 10–FOUR, GOOD BUDDY, are similar in only one respect. Plaintiffs cannot contend that consumers would be confused as to the source of the games because both use the phrase 10–4. This phrase is probably the most common of the C.B. radio jargon. This was particularly so at the time that both games were on the market and the C.B. fad was in vogue. A popular song of the time, which was largely responsible for the appeal of the fad, frequently used the phrase 10–4. Without other similarities, being present, plaintiffs cannot claim that the presence of this one "word" in both marks would confuse the public. Further, the parties did not even present this word in the same way to the public: 10–4 vs. 10–FOUR. Finally, there is no similarity between the packaging of the two games, other than it being obvious that both were using the C.B. radio theme. *See,* Appendix I. No likelihood of confusion of source could be found to exist on the basis of the record. Accordingly the defendant's motion for summary judgment on the issue of trademark infringement and violation of the Lanham Act is granted.

Defendant's motion for summary judgment is granted, as to the federal claims alleged in the complaint. This Court lacks jurisdiction to hear the plaintiff's state law claims. *United Mine Workers v. Gibbs, supra.*[6] Thus, this cause is dismissed in its entirety.

6. *See supra* note 2; P.M.