**James H. HUGHES, Jr.,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 683,**
**Defendant-Appellee.**

**No. 75–3310.**

United States Court of Appeals,
Ninth Circuit.

May 19, 1977.

Edwin C. Martin, Los Angeles, Cal., Gerald U. B. Kane, Redondo Beach, Cal., argued, for plaintiff-appellant.

Ronald Domnitz, argued, Domnitz & Prochazka, San Diego, Cal., Coyle & Dunford, Los Angeles, Cal., for defendant-appellee.

Before HUFSTEDLER, GOODWIN and ANDERSON, Circuit Judges.

PER CURIAM:

Only one issue is presented by this appeal: Was summary judgment appropriate in appellant's suit alleging that appellee breached its duty of fair representation? We hold that it was not and reverse.

Appellant, James H. Hughes, Jr., was employed as a truck driver by Shoreline Beverage Company ["Shoreline"] to transport beer. Appellee, the International Brotherhood of Teamsters, Local 683 ["Local 683"], represented Shoreline's employees in signing a collective bargaining agreement with Shoreline. Prior to April 1971, Shoreline only required its drivers to deliver beer. But after April 1971, Shoreline's drivers were also required to sell beer; thus they had to keep invoices, rotate stock and maintain a record of each customer's needs. Drivers were given the choice whether to become driver-salesmen and appellant chose to do so.

Appellant alleges that while he was employed by Shoreline, Shoreline violated the collective bargaining agreement by refusing to pay overtime for employee time spent at Shoreline's meetings with its employees, by making employees load excess cases without the aid of a helper, and by not paying drivers agreed-to premiums for selling greater than 250 cases per day. Furthermore, when appellant or his fellow workers would complain to Local 683 about these violations, they were told to keep quiet. Because he was particularly ardent in his insistence on the strict letter of the collective bargaining agreement, appellant alleges, Shoreline wanted to fire him. In April 1971, Shoreline tried to fire appellant ostensibly for his repeated invoice errors, failure to keep his inventory well stocked, failure to report to the office twice a day and for his derogatory comments to Shoreline customers about Shoreline's service. Without investigating the merits of Shoreline's charges, appellee persuaded Shoreline to change its termination decision to a five-day disciplinary lay-off.

Appellant returned to work in June 1971, after recovering from a work-related injury. He alleges that Shoreline assigned him to the lowest paying and most arduous tasks with the hope that he would resign. On June 25, 1971, Shoreline met with appellant, representatives from Local 683 and the shop steward in order to inform appellant that he was being terminated because of his deficient performance. Upon hearing that he was fired appellant shouted a profanity at Shoreline's manager. Appellee persuaded appellant to agree to resign whereupon he would receive severance and vacation pay benefits. Appellant, though, withdrew his resignation and demanded arbitration on the last day that appellee could have filed such a demand under the terms of the collective bargaining agreement.

After appellee served the demand for arbitration upon Shoreline, appellee arranged a meeting with appellant and Local 683's business agent and secretary-treasurer to

investigate the possibilities for arbitration. Appellant claims that the interview only lasted thirty minutes and that the union's attorney, Mr. Prochazka, was hostile to him. Shortly after this interview, Prochazka recommended that the union not proceed with any arbitration of appellant's discharge. Basically, Mr. Prochazka viewed appellant's case as one where appellant could not adapt to the demands of a new job and that his use of profanity at the June 25th termination meeting made a successful outcome upon arbitration highly unlikely. Appellee relied on Prochazka's recommendation in refusing to bring appellant's discharge to arbitration.

The district court found that appellant presented no evidence that appellee acted "in an arbitrary, capricious, discriminatory manner or in bad faith toward Plaintiff." It therefore granted summary judgment in favor of appellee and noted that appellee had:

> "acted solely on the basis of relevant considerations and did not act with any arbitrary, capricious, or discriminatory motivation in refusing to process the Plaintiff's grievance to arbitration and, in relying upon advice of counsel, acted in good faith toward Plaintiff at all times material hereto."

■ In order to state a claim for breach of fair representation an employee need only show "arbitrary or bad-faith conduct on the part of the Union in processing his grievance." (*Vaca v. Sipes* (1967) 386 U.S. 171, 193, 87 S.Ct. 903, 918, 17 L.Ed.2d 842.)

He does not have to allege that the union participated in fraud or deceitful conduct. (*See Beriault v. Local 40, Super Cargoes & Checkers of International Longshoremen's & Warehousemen's Union* (9th Cir. 1974) 501 F.2d 258, 264 ("[M]ere arbitrary conduct by the union in representing those within a particular bargaining unit constitutes a breach of that union's duty."); *Duggan v. International Assoc. of Machinists* (9th Cir. 1975) 510 F.2d 1086, 1088; *N.L.R.B. v. General Truck Drivers, Warehousemen, Helpers and Automotive Employees, Local 315* (9th Cir. 1976) 545 F.2d 1173, 1175.) Appellant argues that the district court erred in finding that "no genuine issue as to any material fact" (*see* Fed.R.Civ.P. 56(c)) exists as to appellant's claim that appellee acted "arbitrarily" in processing his grievance. Although the issue is a close one, we must agree with appellant.

■ Upon review of a summary judgment order, we are obligated to view the record in the light most favorable to the party opposing the motion. (*See Melancon v. Ins. Co. of North America* (5th Cir. 1973) 482 F.2d 1057, 1059.) Although appellant raised several meritless arguments in contesting the district court's grant of summary judgment in favor of appellee,[1] appellant raised an inference of complicity between appellee and Shoreline in the lower court proceedings sufficient to withstand the motion for summary judgment.

In response to appellee's motion for summary judgment, appellant offered several affidavits describing a pattern of appellee's

---

1. For example, appellant argues that summary judgment was inappropriate where a factual issue remained as to appellee's failure to investigate those charges that resulted in appellant's five-day disciplinary lay-off. But the failure to provide such an investigation is not "material" to the issue of whether appellee acted arbitrarily in refusing to arbitrate appellant's wrongful discharge claim based on a different and larger set of deficiencies than those used to justify the disciplinary lay-off.

Appellant also argues that a factual issue exists as to appellee's failure to pursue an investigation into Shoreline's grounds for terminating appellant independent from Prochazka's investigation; and that the existence of this dispute precludes a grant of summary judgment. It is true that appellee asserted that its business agent conducted an independent investigation to check the veracity of Shoreline's claims, but appellant does not deny this assertion. It merely disputes the thoroughness of this investigation. Furthermore, even if we assume that appellee's investigation was not thorough, this fact alone would not constitute, as a matter of law, arbitrary behavior actionable under *Vaca v. Sipes.* Thus, the thoroughness of appellee's investigation is not a "material" fact sufficient to preclude summary judgment.

disregard for violations of the collective bargaining agreements it negotiated with Shoreline as well as other trucking companies. Affidavits from both Shoreline's employees and employees of other trucking companies stated that employees who stood firm on enforcing the collective bargaining agreement were fired at the first opportunity their employers had to "legitimately" discharge or demote them, i. e., after the employees had been temporarily disabled. Upon complaint to appellee, and often to the same business agent involved in the present case, appellee would either tell the employees "not to rock the boat" or would promise action but do nothing—including refusing to arbitrate their grievances. Appellant uses the aforementioned affidavits to infer that appellee wanted to get rid of him because his fervor in enforcing the collective bargaining agreement upset the allegedly sweetheart relationship appellee had established with Shoreline.[2] So motivated, appellee breached its duty to fairly represent appellant when it refused to arbitrate appellant's wrongful discharge claim.

Appellant cites the treatment it received from appellee's attorney, Mr. Prochazka, as indicative of the effect appellee's cozy relationship with Shoreline had on appellant's demand for arbitration.[3] Not only was the interview hostile, but appellant also alleges that it was, at best, perfunctory. Ostensibly an effort to gather the facts, the interview merely consisted of Prochazka's asking appellant to admit or deny Shoreline's charges against him without giving appellant sufficient opportunity to qualify his answers. Had he been given such an opportunity, appellant claims that he would have been able to prove that his discharge was improper. With this format, appellant notes, it is no wonder that the interview lasted merely thirty minutes. And it was on the basis of this allegedly sham interview that appellee chose not to arbitrate appellant's claim of wrongful discharge.

■ If appellant's allegations are true, they present the paradigm setting for invoking the duty of fair representation. Appellant is caught between a hostile employer and a union which appears to represent Shoreline's interests rather than appellant's. If summary judgment would be proper in the present case, all a union would have to do to protect itself against a fair representation suit would be to go through the motions of processing an employee's grievance short of arbitration sufficient to withstand a claim that these motions were merely perfunctory. In this way, an employee with a legitimate claim against his employer would have no means of adjudicating his claim. Because we must draw all inferences in favor of appellant, summary judgment is improper in the present case where appellant raises an inference as to appellee's improper motivation in refusing to arbitrate his discharge. Although appellant may not ultimately be able to produce enough evidence to carry his burden at trial, he should not be prevented from trying

**2.** Appellant also offered the affidavits of employees of a different trucking company than Shoreline who testified that they saw appellee's business agent take out cases of beer from their company's office without an invoice. Although the fact that another employer may have used beer to bribe appellee does not prove that any bribes were exchanged in the present case, the existence of these bribes would support appellant's inference of a sweetheart arrangement between appellee and the trucking companies.

**3.** Appellant makes much of the fact that Prochazka's recommendation against arbitration was influenced by an allegedly erroneous conclusion that appellant's use of profane language at the termination meeting was sufficient grounds to discharge him. But even if Prochazka was incorrect on the merits of appellant's discharge, his error would not establish arbitrary or capricious behavior on appellee's part under *Vaca v. Sipes.* (*See* 386 U.S. at pp. 192–93, 195, 87 S.Ct. at pp. 918–19 ("[I]f a union's decision that a particular grievance lacks sufficient merit to justify arbitration would constitute a breach of the duty of fair representation because a judge or jury later found the grievance meritorious, the union's incentive to settle such grievances short of arbitration would be seriously reduced. . . . [A] breach of the duty of fair representation *is* not established merely by proof that the underlying grievance was meritorious. . . .").)

to do so by a premature termination of his claim on summary judgment.

REVERSED and REMANDED for further proceedings consistent with the views herein expressed.