James R. HERSHMAN, Plaintiff,

v.

SIERRA PACIFIC POWER COMPANY, a Nevada Corporation, and International Brotherhood of Electrical Workers, Local Union No. 1245, Defendants.

Civ. No. R–77–0013 BRT.

United States District Court, D. Nevada.

July 1, 1977.

Thornton, Stephens, Atkins & Kellison, Wallace D. Stephens, Reno, Nev., for plaintiff.

Neyhart & Anderson, Peter D. Nussbaum, San Francisco, Cal., for defendant I.B. E.W. Local 1245.

John Madariaga and George M. Stout, Reno, Nev., for defendant Sierra Pacific Power Co.

## ORDER

BRUCE R. THOMPSON, District Judge.

The defendant International Brotherhood of Electrical Workers, Local Union No. 1245 (hereinafter "Union"), has moved this Court to dismiss and for summary judgment, pursuant to Rules 12(b)(6) and 56, F.R.C.P., respectively, in that the plaintiff James Hershman has failed to state a claim upon which relief can be granted and there exists no genuine issue as to any material fact. For the purpose of these motions they shall be treated as one for summary judgment and disposed of as provided in Rule 56, F.R.C.P.

The plaintiff is an employee of defendant Sierra Pacific Power Company (hereinafter "Sierra Pacific"). The defendant Union is the recognized collective bargaining representative for various Sierra Pacific employees, including the plaintiff.

In the latter part of 1971, the plaintiff, while an employee of Sierra Pacific, was promoted from the position of Lineman to Working Foreman. In July of 1974, Sierra Pacific notified Mr. Hershman and the defendant Union that it intended to demote him to the position of Lineman "for failure to discharge the duties of his position" as a Working Foreman.

Pursuant to section 16.7(b)[1] and 16.8(b)[2] of the collective bargaining agreement in effect at that time between Sierra Pacific and defendant Union, the Union conducted an investigation into the propriety of the demotion of the plaintiff. As a result of this investigation, it was the Union's decision to forego any further review into the Hershman matter inasmuch as it was its conclusion that Sierra Pacific had sufficient grounds to justify his demotion.

The plaintiff then brought this action against the Union alleging that it had breached its duty of fair representation for refusing to conduct any further investigation into the plaintiff's demotion. Hershman similarly brought this action against Sierra Pacific for violating the collective bargaining agreement between Sierra Pacific and Union.

■ The purpose of summary judgment is to determine whether there is any genuine issue of material fact in dispute, and if not, to render judgment in accordance with the law as applied to the established facts. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Rule 56(c), F.R.C.P. clearly states that a summary judgment shall be rendered if the pleadings and affidavits, together with any other extraneous materials, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

■ It is obvious that Union's decision to forego any further investigation into Hershman's demotion was clearly within the purview of the collective bargaining agreement between it and Sierra Pacific. "[T]he Union may investigate the facts used by the Company in making its [decision to demote a Working Foreman for failure to discharge the duties of his position]. If, after such investigation, the Union feels that it would serve a useful purpose to further review the matter, the Union *may* request a meeting with an officer of the Company or his representative." (Emphasis added)

For this Court to compel the Union to further investigate into this matter would be to grant more than the contract provides. This the Court has no power to do, absent evidence of Union's breach of its duty of fair representation. See *Encina v. Tony Lama Company,* 316 F.Supp. 239, 245 (W.D.

1. (b) In filling vacancies in jobs hereinafter collectively referred to in Subsection 16.7(c) as "working foreman jobs," Company shall consider the appointment of employees to any such vacancy as herein provided, and where the Company determines that the following qualifications are relatively equal, seniority shall govern:
 1. The quality of the employee's performance on his current job.
 2. His background of education and experience in similar or related work.
 3. The amount of special preparation for the new job, if any is necessary or pertinent, which the employee has completed at the time the bid is made.
 4. His previous demonstrations of leadership and progress.
 It is the intent of the parties that the Union shall not have the right to arbitrate the "judgment" of the Company, but that the Union shall have right of appeal if it believes there was not a fair submission of facts upon which that judgment was made.
 After selecting an applicant on the above basis, the Company shall notify the Union by letter. During a period of fifteen (15) calendar days following the receipt of such notification, the Union may investigate the facts used by the Company in making its selection. If, after such investigation, the Union feels that it would serve a useful purpose to further review the matter, the Union may request a meeting with an officer of the Company or his representative. The Union Representative at such meeting shall not have participated actively in the original investigation. The Union and Company representatives would review the facts used by the Company in making the selection. Company's initial decision will stand unless, after such review of the facts, Union and Company's representatives agree that the decision was arbitrary. In any event, the Union and Company representatives shall, within thirty (30) days, dispose of the case and their decision shall be final and binding upon the Company, the Union, and the employees involved.

2. (b) In the event it is necessary for the Company to demote a "working Foreman," as defined in Subsection 16.7(c) for failure to discharge the duties of his position, the identical procedures of notice to Union, investigation and review procedure for appointment as outlined in Subsection 16.7(b), shall be used prior to completion of demotion.

Tex.1976), *aff'd,* 448 F.2d 1264 (5th Cir. 1971).

In our determination as to whether Union breached its duty of fair representation to the plaintiff Hershman, we must be guided by the Supreme Court's decision in *Vaca v. Sipes,* 386 U.S. 171, 193, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In *Vaca,* the Court noted that an aggrieved employee who alleges a breach of fair representation on the part of the Union must prove "arbitrary or bad-faith conduct on the part of the Union in processing his grievance." The "bad-faith" requirement set forth in *Vaca* does not require proof that Union participated in fraud or deceitful conduct, *Beriault v. Local 40, Super Cargoes & Checkers of International Longshoremen's & Warehousemen's Union,* 501 F.2d 258, 264 (9th Cir. 1974), only that it conducted itself arbitrarily in representing Hershman in the grievance process. *Duggan v. International Assoc. of Machinists,* 510 F.2d 1086, 1088 (9th Cir. 1975).

In the present case, Hershman's claim of breach of fair representation hinges on the fact that Union may not have conducted as thorough an investigation into his demotion as he desired. Even assuming arguendo that Union's investigation into Hershman's demotion was inadequate, this fact alone does not constitute a breach of Union's duty of fair representation. See *Hughes v. Intern. Broth. of Teamsters, Local 683,* 9th Cir., 1977, 554 F.2d 365. *Sarnelli v. Amalgamated Meat Cutters, Etc., Loc. U. # 33,* 457 F.2d 807 (1st Cir. 1972). In *Sarnelli,* the Court emphasized:

> "If the union has a duty to represent a member up to the point that it could show it was unreasonable, viewed simply from his standpoint, to go further as plaintiff seemingly contends, liability might possibly be found here. This is not, however, the proper test. The only burden upon a union is to act fairly and in good faith, something considerably less than a duty of support measured solely with reference to the member."

We are further persuaded by the language in the Ninth Circuit's recent opinion, *Hughes v. Intern. Broth. of Teamsters, Local 683,* supra:

> "[A]ppellant does not deny [that the union conducted an independent investigation.] It merely disputes the thoroughness of this investigation. Furthermore, even if we assume that appellee's investigation was not thorough, this fact alone would not constitute, as a matter of law, arbitrary behavior actionable under *Vaca v. Sipes.* Thus, the thoroughness of appellee's investigation is not a 'material' fact sufficient to preclude summary judgment."

In the present case, the plaintiff does not contest the fact that upon his demotion that Union launched an immediate investigation into the matter pursuant to the collective bargaining agreement. Hershman does contend, however, that this investigation "was spurious, carried on in bad faith and a breach of defendant local union's fiduciary duties."

As a matter of law, a union may refuse to process a grievance or decide to forego further investigation into an employee's demotion or termination for a multitude of reasons so long as it does "not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." *Vaca v. Sipes,* supra 386 U.S. at 191, 87 S.Ct. at 917; *Griffin v. United Auto Workers,* 469 F.2d 181, 183 (4th Cir. 1972).

A union may in good faith decide that a particular employee's grievance is without merit and decline to pursue it, *Lewis v. Magna American Corp.,* 472 F.2d 560 (6th Cir. 1972), or it may even decline to press a prima facie meritorious grievance if it determines that the likelihood of success is doubtful, or is outweighed by the cost of pursuing redress. *Turner v. Air Transport Dispatchers' Ass'n,* 468 F.2d 297, 299 (5th Cir. 1972); *Orphan v. Furuco Constr. Corp.,* 466 F.2d 795, 802 (7th Cir. 1972). Accordingly, when a union decides not to process a grievance or conduct a comprehensive investigation, the fair representation doctrine should focus on its reasons. While the merits of the grievance itself are relevant, they

assist mainly in assessing the reasonableness of the union's decision.

In *Vaca,* the Court described the duty of fair representation as "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* supra 386 U.S. at 177, 87 S.Ct. at 910. In ascertaining if Union's decision to forego any further investigation into Hershman's demotion was reasonable, we are particularly guided by the affidavit of John Stralla, the investigating Union representative. Stralla's investigation, albeit not as comprehensive and thorough as that desired by Hershman, consisted of interviews with several of plaintiff's fellow employees, and a review of his personnel file with Sierra Pacific. This investigation revealed the following:

1. On August 25, 1972, the plaintiff and his crew were called upon to make an emergency change on a transformer bank. He was given a verbal reprimand for the errors he committed in connection with that job; for his failure to call for help if he needed it; and for the fact that the job took nine hours, when it should have been completed in three. He also received a letter from the Electric Distribution Superintendent stating that "All indications on this particular job showed that you were in complete ignorance as to what hook-up you were working with." The letter went on to warn Hershman that "If such an incident should happen again a complete review of your qualifications as a Line Working Foreman will be necessary."

2. In February, 1974, two of plaintiff's supervisors were informed that he and his crew made a daily run to a local doughnut shop. Such trips were in strict violation of Sierra Pacific policy of which Hershman was aware. The supervisors investigated the accusation, determined that it was true, and recommended that he be disciplined. A meeting was held on February 27, 1974, at which plaintiff admitted his responsibility for the trips to the doughnut shop and he was given two days off without pay.

3. On July 1, 1974, plaintiff caused one of Sierra Pacific's vehicles to get stuck at the bottom of a gully. He then damaged a second vehicle while attempting to extricate the first. In view of the fact that he had been over the road several times, his supervisor concluded that his actions amounted to "dereliction", and that he had "used no logic whatsoever."

Based on the July 1 and other incidents, his supervisor concluded:

"The overall picture of Mr. Hershman's actions and attitudes fall quite short in all areas required in his present position. I cannot believe that he has not been able to comprehend the responsibilities authorized to him by the Company. His short comings are apparent to me and detrimental to the crews in all aspects such as leadership, initiative, common sense and the technical aspects in the field he is pursuing.

"It is respectfully requested that Mr. Hershman be relieved of his present position and demoted to the next level."

In addition to reviewing plaintiff's file, Mr. Stralla also spoke with several of plaintiff's fellow employees who had worked with him. They expressed the following views about the plaintiff:

1. He is very headstrong and does not listen to suggestions from members of his crew.

2. He is not smart and has endangered the members of his crew by having work performed in an unsafe manner.

3. He never checks with supervision when problems occur.

4. He drives by his wife's place of work every morning to wave and honk at her, regardless of where his crew is assigned to work for that day.

█ Plaintiff contends that during the course of this investigation, he requested the Union and Stralla to interview various named Sierra Pacific employees (presumably to attest to Hershman's qualifications as Working Foreman) and that Stralla failed to do so. Similarly, Hershman places great

emphasis on Stralla's alleged failure to investigate into a personality conflict between himself and a Sierra Pacific supervisor which, he contends, may have played a primary part in his demotion. Even assuming these facts to be true, as we do here for purposes of summary judgment, this failure alone on the part of Stralla does not amount to that type of "arbitrary conduct" contemplated by *Vaca v. Sipes,* supra. Absent any evidence of severe intentional discrimination in the selection process of the particular individuals to be interviewed, Stralla's failure to interview each and every individual as may have been requested by Hershman does not, in itself, constitute a breach of Union's duty of fair representation. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Hughes v. Intern. Broth. of Teamsters, Local 683,* supra; *Sarnelli v. Amalgamated Meat Cutters, Etc., Loc. U. # 33,* supra.

■ In regard to the above-mentioned employment-related incidents, Hershman contests neither their occurrence nor the accuracy of the manner in which they were reported. As to whether these incidents are sufficiently frequent and severe enough to justify his demotion, however, Hershman would have this Court substitute its judgment for that of Sierra Pacific. Absent any evidence of arbitrary or bad faith conduct on the part of Union, we decline to question the propriety of Sierra Pacific's decision to demote the plaintiff. A contrary result would give unions little or no initiative to ferret out meritless claims. Moreover, allowing a union at least minimal discretion in screening out frivolous grievances stimulates consistent treatment of similar complaints and strengthens its position as exclusive bargaining agent. *Harris v. Chemical Leaman Tank Lines, Inc.,* 437 F.2d 167, 171 (5th Cir. 1971).

Although we offer no opinion concerning the propriety of Hershman's demotion, we do conclude that Union's decision to forego further investigation into the matter was not arbitrary and unreasonable under the circumstances or a breach of its duty of fair representation. On the contrary, there is substantial evidence, as set forth in Stralla's affidavit and various internal documents attached thereto, pointing to the fact that Hershman's suitability as a Working Foreman was at least questionable.

Even assuming that all plaintiff's allegations as they appear in his pleadings and affidavit are true, such facts alone indicate only that Union's investigation was not as thorough as that desired by plaintiff, and not that the investigation was conducted in an arbitrary or bad faith manner as set forth in *Vaca v. Sipes,* supra.

We therefore conclude that there exists no genuine issue as to any material fact.

Accordingly,

*IT HEREBY IS ORDERED* that defendant's motion for summary judgment be, and hereby is, granted.