**Carson Wayne NEWTON, Plaintiff,**

v.

**UNIWEST FINANCIAL CORP., a corporation; United Savings Bank of Wyoming, F.S.B., a Federal stock savings bank; Uniwest Service Corp., a corporation; The Federal Deposit Insurance Corporation, an agency of the United States, as Receiver for Buena Vista Bank and Trust Co.; Mark Perlmutter and Gary H. McGill, Defendants.**

**No. CV–S–87–706 HDM.**

United States District Court,
D. Nevada.

July 11, 1990.

Peter C. Bernhard, Charlotte M. Matanane, Schreck, Jones, Bernhard, Woloson & Godfrey, Las Vegas, Nev.

David W. Stark, Kristen Mix Myer, Otten, Johnson, Robinson, Neff & Ragonetti, Denver, Colo.

Gary R. Goodheart, Jones, Jones, Close & Brown, Chartered, Las Vegas, Nev.

William E. Murane, Jack M. Englert, Jr., Holland & Hart, Denver, Colo.

Jodi E. Raizin, Sully, Lenhard & Raizin, Las Vegas, Nev.

James M. Lyons, Patrick M. Flaherty, Rothberger, Appel, Powers & Johnson, Denver, Colo.

Bruce M. Judd, Wright & Stewart, Las Vegas, Nev.

Kevin Michael Shea, Holme Roberts & Owen, Denver, Colo.

## FINDINGS OF FACTS CONCLUSION OF LAW AND ORDER

McKIBBEN, District Judge.

The Court having considered the memoranda of points and authorities of all·of the parties regarding the motion for summary judgment of the Federal Deposit Insurance Corporation, as receiver for Buena Vista Bank & Trust Co. (the "FDIC"), heard oral argument on this motion on March 22, 1990, and being fully advised in the premises makes the following findings of fact, conclusions of law, and order.

### FINDINGS OF FACT

1. Buena Vista Bank & Trust Co. ("Buena Vista") was a bank chartered under the laws of Colorado.

2. On August 28, 1986, the Colorado State Banking Commission declared Buena Vista to be insolvent, and took possession of the properties and affairs of Buena Vista.

3. On August 28, 1986, the FDIC accepted the appointment as the receiver of Buena Vista, and the FDIC in its receivership capacity now holds the assets of Buena Vista.

4. In late 1984, plaintiff Carson Wayne Newton ("Newton") took part in an investment that involved the purchase of 5,000 shares of preferred stock of defendant Uniwest Financial Corporation ("Uniwest Financial").

5. It is undisputed that Newton learned of this investment opportunity through the advice of his lawyers from the law firm of Mortimer, Sourwine, Mousel, Sloane & Knobel in Reno, Nevada.

6. It is also undisputed that lawyers from the firm of Mortimer, Sourwine, Mousel, Sloane & Knobel represented Newton throughout the negotiations relating to this investment.

7. Newton received a loan in the amount of $200,000 from Buena Vista as evidenced by promissory note no. 1248 4508 00 dated December 27, 1984 (the "Note").

8. The FDIC is the holder of the Note.

9. It is undisputed that Newton received the funds evidenced by the Note, and used those funds to finance in part his purchase of the Uniwest Financial stock.

10. Newton's lawyers advised him to enter into the Note as part of the investment transaction.

11. There is no dispute that Newton both executed the Note and participated in the investment scheme involving the purchase of stock in Uniwest Financial on the advice of counsel.

12. In fact, it is uncontroverted that Newton had absolutely no contact with any of the parties to this action during the relevant time period, and acted at all times through his counsel.

13. Newton's lawyers, Frank Fahrenkopf, David L. Mousel, Julien G. Sourwine, Wayne L. Mortimer, and Douglas A. Sloane all joined Newton in this investment, and each of these gentlemen received a loan from Buena Vista, like Newton.

14. It is uncontroverted that Buena Vista neither conditioned its loans to Newton and his lawyers on the purchase of Uniwest Financial stock, nor gave any information to Newton or his lawyers about the Uniwest Financial stock offering.

15. Mr. Fahrenkopf, Mr. Mousel, Mr. Sourwine, Mr. Mortimer, and Mr. Sloane have repaid their loans from Buena Vista.

16. Buena Vista had an ongoing correspondent banking relationship with defendants Uniwest Financial and United Savings Bank of Wyoming ("United Savings").

17. The undisputed evidence is that Buena Vista became involved in making loans to Newton and his lawyers, because the president of Buena Vista, Roy Bowen, happened to be in the offices of Uniwest Financial on other business.

18. In this action, Newton has alleged that there were material misrepresentations in the 1983 annual report of Uniwest Financial, the 10–K of Uniwest Financial for 1983, and the 10–Q of Uniwest Financial dated September 30, 1984.

19. Buena Vista did not participate in any way in the preparation or dissemination of the annual report, 10–K and 10–Q of Uniwest Financial.

20. There is no evidence that any representative of Buena Vista even had knowledge of the contents of the financial reports of Uniwest Financial.

21. The FDIC has asserted a counterclaim against Newton to recover the indebtedness due under the Note.

22. The FDIC is entitled to recover the principal of the Note, plus accrued and accruing interest.

23. The FDIC has submitted an Affidavit, which establishes that the unpaid principal and interest due under the Note as of October 31, 1989, was $277,386.26.

24. The Affidavit of the FDIC also establishes that interest accrues on the unpaid principal and interest under the terms of the Note at the rate of $63.0136 per day after October 31, 1989.

## CONCLUSIONS OF LAW

25. This Court has jurisdiction pursuant to § 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa; 18 U.S.C. § 1964(a); 28 U.S.C. § 1331 and the doctrine of pendant jurisdiction.

26. The entry of summary judgment is appropriate when "the pleadings and affidavits, together with any other extraneous materials, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hershman v. Sierra Pacific Power Co.*, 434 F.Supp. 46, 48 (D.Nev. 1977); *see also Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). *NLRB v. International Association of Bridge, Structural and Ornamental Ironworkers Local 433*, 549 F.2d

634, 639 (9th Cir.1977); *Thomas v. Bible,* 694 F.Supp. 750, 756 (D.Nev.1988).

27. In addition to the memoranda and arguments of counsel, the Court has considered extensive submissions of documents, excerpts of deposition transcripts, and affidavits, and the Court finds that this case is ripe for disposition of summary judgment.

28. Newton has alleged that the FDIC is liable through the actions of Buena Vista for aiding and abetting the other defendants' alleged violation of Section 10(b) of Securities Exchange Act and Rule 10b–5.

29. The elements of a cause of action for aider and abetter liability under Section 10(b) of the Securities Exchange Act are:

(a) the existence of an independent primary wrong;

(b) actual knowledge by the alleged aider and abetter of the wrong and of his role in furthering it; and

(c) substantial assistance by the aider and abetter in the wrong.

*Harmsen v. Smith,* 693 F.2d 932, 943 (9th Cir., 1982); *see also Orloff v. Allman,* 819 F.2d 904, 907 (9th Cir., 1987).

30. The Court has dealt with the question of whether Newton has proved the existence of an independent primary wrong on the part of the other defendants of this action in connection with the Motions to Dismiss and For Summary Judgment of those defendants.

31. Newton cannot establish aider and abetter liability against the FDIC in the absence of establishing a prima facie case against the other Defendants for the primary violation of Section 10(b) of the Securities Exchange Act and Rule 10b–5.

32. Even if Newton establishes the existence of an independent primary wrong, Newton has failed as matter of law to establish the second and third elements of aider and abetter liability.

33. There is no evidence that Buena Vista had actual knowledge of the alleged securities fraud, nor is there any evidence that Buena Vista was aware of its alleged role in furthering this securities fraud scheme.

34. The determination of whether an aider and abetter gave substantial assistance to a securities fraud claim is a question of law. *Edwards & Hanly v. Wells Fargo SEC Clearance Corp.,* 602 F.2d 478, 484 (2nd Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980).

35. A party must show a substantial causal connection "between the culpable conduct of the alleged aider and abetter and the harm to the plaintiff" in order to establish substantial assistance in the wrong. *Mendelsohn v. Capital Underwriters, Inc.,* 490 F.Supp. 1069, 1084 (N.D.Cal.1979); *see also Landy v. FDIC,* 486 F.2d 139 (3rd Cir.1973), *cert. denied,* 416 U.S. 960, 94 S.Ct. 1979, 40 L.Ed.2d 312 (1974).

36. In this case, the substantial assistance of Buena Vista to the alleged securities fraud must relate to the alleged misrepresentations in the financial documents of Uniwest Financial. *Terrydale Liquidating Trust v. Gamlich,* 549 F.Supp. 529, 531 (S.D.N.Y.1982). Newton has failed to establish any genuine issue as to any material fact relating to such a causal connection between the alleged misrepresentations and the actions of Buena Vista.

37. There is no evidence whatsoever of any involvement by Buena Vista in the preparation or dissemination of the financial report of Uniwest Financial.

38. The mere fact that Buena Vista loaned funds to Newton, which Newton in turn used to buy Uniwest Financial stock, has no relevance whatsoever to the alleged securities fraud.

39. On March 20, 1990, Newton filed a Motion for Leave to Supplement Plaintiff's Opposition to Defendants' Motions for Summary Judgment. This Motion was not timely, and the Court has denied it.

40. The Court has reviewed, however, the contents of this Motion. Even if the Court were inclined to grant this Motion, the additional evidence referred to by Newton, has no relevance whatsoever to the issues of this case.

41. Newton has cited allegations by the FDIC that the president of Buena Vista was involved in dishonest transactions, including the misapplication of bank funds. Newton also has cited a criminal indictment of the former president of Buena Vista relating to the misapplication of bank funds.

42. Even if the allegations relating to Mr. Bowen ultimately are proven, these allegations have no relevance to Newton's allegations of securities fraud. There is nothing in these extraneous pleadings, which provides evidence of the necessary participation by Buena Vista in the alleged securities fraud in order to subject the FDIC to aider and abetter liability.

43. This case has been on the Court's docket for over two years, and Newton has engaged in extensive discovery. Newton's discovery has not produced any evidence of the necessary elements to establish his claims of aiding and abetting securities fraud against the FDIC. Accordingly, the FDIC is entitled to summary judgment on Count II of Newton's Amended Complaint as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325–27, 106 S.Ct. 2548, 2553–55, 91 L.Ed.2d 265 (1986); *cf. SEC v. Seaboard Corp.*, 677 F.2d 1315, 1316–17 (9th Cir.1982); *Mirotznick v. Sensney, Davis & McCormick*, 658 F.Supp. 932, 941 (W.D.Wash.1986).

44. Count VII of Newton's First Amended Complaint alleges a claim of civil conspiracy against all of the Defendants to induce Newton to take loans for the purchase of the Uniwest Financial stock.

45. The elements of civil conspiracy are:

    (a) a combination of two or more persons;

    (b) who, by some concerted action;

    (c) intend to accomplish some unlawful objective;

    (d) for the purpose of harming others;

    (e) which results in damage.

*Collins v. Union Federal Savings and Loan Association*, 99 Nev. 284, 662 P.2d 610, 622 (1983).

46. Since the Court has found that Newton has failed to establish his claim of aiding and abetting securities fraud against the FDIC, Newton's claim of civil conspiracy against the FDIC also must fail.

47. Even if the Court's ruling on Newton's claim for aiding and abetting was not dispositive of this issue, Newton has failed to raise any material issue of fact establishing participation in an unlawful act or a lawful act in an unlawful manner, or the existence of an agreement.

48. The FDIC is entitled to summary judgment on Count VII of Newton's First Amended Complaint as a matter of law. *See Martin–Trigona v. Brooks & Holtzman*, 551 F.Supp. 1378, 1383 (S.D.N.Y. 1982).

49. In Count VI of Newton's Amended Complaint, Newton seeks the entry of an injunction to prevent the FDIC's collection of the Note. This claim is moot based upon the Court's findings and conclusions relating to Newton's other claims.

50. At the hearing on this Motion on March 22, 1990, the FDIC adopted the other Defendants' arguments that Newton's claims against the FDIC are barred under the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 457–59, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942); *FDIC v. Investors Associates X Ltd.*, 775 F.2d 152, 156 (6th Cir.1985). The Court need not consider the validity of this argument based on its other findings, which are dispositive of this Motion.

51. Newton's only defense to the payment of the sums due under the Note are his allegations of securities fraud. The court has disposed of those allegations, and Newton, therefore, has no defense to the payment under this Note, as a matter of law.

52. The FDIC is entitled to recover the unpaid principal and interest due under the Note in the amount of $277,386.26 as of October 31, 1989, plus $63.0136 per day from and after November 1, 1989.

## ORDER

Based upon the foregoing findings and conclusions, the Court orders that:

(i) Summary judgment shall enter in favor of the FDIC and against Plaintiff Carson Wayne Newton on Count II, Count VI and Count VII of Newton's First Amended Complaint;

(ii) Summary judgment shall enter in favor of the FDIC and against Plaintiff Carson Wayne Newton on the FDIC's Counterclaim against Newton in the amount of $277,386.26, plus $63.0136 per day from and after November 1, 1989.