Preston **TRACY, Jr.,** et al.

v.

**LOCAL 255 OF the INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, TECHNICAL, SALARIED AND MACHINE WORKERS, AFL–CIO,** et al.

Civ. A. No. 91–30103–F.

United States District Court,
D. Massachusetts.

Feb. 21, 1992.

Lawrence R. Ehrhard, Springfield, Mass., for plaintiffs.

Wendy M. Bittner, Bittner & Boyer, Boston, Mass., for defendant Local 255 of Intern. Union of Electronic, Elec., Technical, Salaried and Machine Workers, AFL–CIO.

Barry A. Guryan, Ann E. Johnston, Fordham & Starrett, Boston, Mass., for defendant General Elec. Co.

## MEMORANDUM REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DOCKET # 12, # 28 & # 32)[1]

MICHAEL A. PONSOR, United States Magistrate Judge.

### I.  INTRODUCTION.

Plaintiffs are two former employees of defendant General Electric Company and are members of defendant Local 255. They have brought this hybrid action pursuant to § 301 of the National Labor Relations Act, 29 U.S.C. § 185, alleging, first, that on September 21, 1990 they were laid off improperly by General Electric and, second, that Local 255 breached its duty of fair representation in failing to prevent this lay off.

On September 30, 1991 General Electric filed a Motion for Summary Judgment and on October 9, 1991 this court ordered a stay of discovery pending a ruling on the motion.

Plaintiffs filed an amended complaint on November 4, 1991.  On January 7, 1992 all parties consented to proceed before this Magistrate Judge pursuant to Fed.R.Civ.P. 73 and 28 U.S.C. § 636(c).  Defendants have now refiled motions for summary judgment directed at the amended complaint.  For the reasons set forth below, the defendants' motions will be allowed.

### II.  FACTS.

On a motion for summary judgment the court must, of course, view the facts in the light most favorable to the plaintiffs and

---

1. The parties to this action have waived their right to proceed before a district judge and consented to have this magistrate judge conduct any and all further proceedings in the case, including the trial, and order the entry of judgment.  Fed.R.Civ.P. 73;  28 U.S.C. § 636(c).

draw all reasonable inferences in their favor. As it happens, few factual disputes exist in the record.

On September 14, 1990 plaintiffs Preston Tracy Jr. and Michael Reed were union shop stewards of defendant Local 255 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, AFL–CIO (the "Union"). *See* Tracy Aff. ¶ 4, Reed Aff. ¶ 3. Tracy and Reed were employed by General Electric Company ("G.E.") Regulator and Inductive Products ("RIP") Transformer Group in Pittsfield, Massachusetts. Tracy Aff. ¶ 2, Reed Aff. ¶ 2.

The Union and G.E. are signatories to a collective bargaining agreement effective June 27, 1988. G.E.L.R. 56.1 at ¶ 2. Under this agreement, Tracy and Reed had been elected Union stewards in November of 1987; they held their positions continuously until their layoffs on September 21, 1990. Tracy Aff. ¶ 4, Reed Aff. ¶ 3. As stewards, Tracy and Reed were responsible for contract administration at the work group level. Their duties included representing members of their groups in the processing of grievances and acting as liaisons between members of their groups and the Union. Tracy Aff. ¶ 5, Reed Aff. ¶ 4.

In May of 1989, G.E. advised the Union that by the end of 1990 it would be closing its entire RIP division in Pittsfield and laying off approximately 350 workers, including fifteen stewards. Dimitropolis Aff. ¶ 3. The bulk of the layoffs were to take place in September of 1990. Reed Aff. ¶ 12. G.E. proposed to retain nine of the most senior workers, most likely until the end of 1990, as a "clean up" crew. *Id.* at ¶ 6. Tracy and Reed were not among the proposed members of this crew because they did not have enough seniority, measured in actual years. However, according to plaintiffs, under the collective bargaining agreement, Article XII, stewards were entitled to "superseniority" during periods of layoff and were to be retained while others in their work group with greater actual longevity were let go. Defendant Exhibit A, p. 48.

Accepting plaintiffs' version of the facts, on or about September 11, 1990, in anticipation of the layoff, Local 255's President Albert "Butch" Pisani spoke with Tracy and asked him if he wanted to exercise his right of retention as a steward under the Union agreement. When asked when he had to know, Pisani replied, "Now." Tracy responded that he wanted to exercise his right to retention. Tracy Aff. ¶ 6. Pisani then tried to persuade Tracy to waive his rights, saying G.E. was "putting a gun" to the Union's and Tracy's head. *Id.* ¶ 7. Pisani told Tracy that if even one steward exercised his right of retention the proposed clean-up crew would not be kept on and all the workers would lose their jobs.[2] Tracy Aff. ¶ 8. Later that same day, Pisani again asked Tracy if he would "cough up his rights" because other stewards had done so. *Id.* at ¶ 10. Tracy apparently declined.

On or about September 11, 1990[3] Pisani asked Reed if he wanted to exercise his retention rights and Reed said he would. Reed Aff. ¶ 5. For the next few days Pisani attempted to persuade Reed to waive his rights, saying Reed would be responsible for Union members being out of work if he did not. *Id.* at ¶ 6.

On or about September 14, 1990 the plaintiffs received from G.E. Notification of Lay-off for Lack of Work notices. The separation was to be effective September 21, 1990. Tracy Aff. ¶ 11, Reed Aff. ¶ 12.

On September 18, 1990 plaintiffs were called to the Union hall where they met "Butch" Pisani, the Union business agent Nicholas Dimitropolis and two stewards, Robert Nolan and Robert Pisani. Reed Aff. ¶ 8. Tracy asked Pisani to tape record the meeting. At this request Pisani became angry and said, in part, "What do you want to tape record us for? You can trust us." Tracy Aff. ¶ 12. The meeting was

---

2. At oral argument counsel for the Local represented, and plaintiff's counsel did not dispute, that G.E. had the right to lay off all the workers and employ an independent contractor for clean-up.

3. The date of September 31, 1991, given in Plaintiff's Statement of Material Facts, ¶ 6, is a typographical error.

not recorded. Plaintiffs were again asked if they wanted to exercise their retention rights. They responded they did. *Id.* At this meeting Pisani called Fritz Bougash, a representative of G.E. He informed Bougash that Robert Pisani was willing to step down as steward and attempted to negotiate a place for Tracy and Reed on the nine person clean-up crew. Reed Aff. ¶ 10.

The plaintiffs were laid off on September 21, 1990, even though individuals, not stewards, were retained as members of the clean-up crew. Tracy Aff. ¶ 17. This crew consisted of nine persons from several production work groups. Dimitropolis Aff. ¶ 9. Of these nine, two were duly elected stewards. *Id.* at ¶ 8.

On September 24, 1990, plaintiffs filed a grievance with the Union dated September 21, 1991, contending that their layoff was in violation of Article XII of the collective bargaining agreement. Plaintiffs' Exhibit A. Soon after, Tracy sent a letter to the Berkshire Eagle, published on October 15, 1990, attacking the leadership of Local 255. Plaintiff's Exhibit C. This letter was answered by a letter critical of Tracy from the Union Sergeant–At–Arms, published on October 29, 1990. Plaintiff's Exhibit D.

During September and the weeks following, the Union processed the plaintiffs' grievance through the third step of the four-step grievance process outlined in the collective bargaining agreement. Lattizzori Aff. ¶ 21. The fourth step is arbitration at the election of either the company or the Union. Defendant Exhibit B. The Union did not contact the plaintiffs formally to keep them apprised of the status of their grievance, nor were Union officials helpful when informal inquiries were made by Reed. Reed Aff. ¶ 13. On or about October 29, 1990, Reed stopped at the Union hall to check on the progress of his grievance. The Union treasurer was unable to locate the file. *Id.* at ¶ 14. In December 1990, Reed asked Pisani for a copy of the collective bargaining agreement. Pisani refused an original but instead offered a photocopy of parts of the agreement. *Id.* at 16.

In early December of 1990 plaintiffs spoke with Attorney Paul Perachi of Pittsfield, Massachusetts about representing them in their grievance. Perachi stated that he wanted to get more information from the Union. Perachi Aff. at ¶ 2. He was unable to find out the status of the grievance from Union representatives, despite speaking with them on several occasions. *Id.* at ¶ 3.

Plaintiffs acknowledge that the Union did in fact process their grievance without success through step three of the grievance process, the final mandatory level of grievance before the optional step of arbitration. G.E. took the position, as it does to this day, that Tracy and Reed were not entitled to positions on the clean-up crew. Plaintiffs do not point to any omitted information, or different approach, that might have altered the outcome of the grievance procedure.

The Union did not proceed to the final step, arbitration. Union officials had been advised by counsel that G.E.'s actions were in conformity with prior practices and that pursuing the matter through the expensive step of arbitration, without justification, in order to retain a high percentage of stewards, might be in violation of the National Labor Relations Act. Dimitropolis Aff. ¶ 26.

## III. DISCUSSION.

Plaintiffs must show arbitrary, discriminatory or bad faith behavior by Union representatives. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967). Here, union officials are charged with personal animosity and failure to communicate amounting to a species of conspiracy against the plaintiffs. In addition, the Union's failure to take the plaintiffs' grievance to arbitration is offered as a violation of the duty of fair representation.[4] The Union, of course, counters that it did not process plaintiffs' grievance in an arbitrary, capricious or perfunctory manner. Moreover, it argues, as a matter of law, that personal animosity,

---

**4.** The argument regarding arbitration, although not included in plaintiffs' written submissions, was presented at oral argument in opposition to summary judgment.

failure to communicate and failure to take a grievance to arbitration, even if proved, do not support a claim of breach of duty of fair representation.

█ The Union's position is well supported by authority. Personal animosity towards the aggrieved party by Union representatives, on its own, is not sufficient to demonstrate arbitrariness. There must be a showing that such animosity *affected the grievance process*. *Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 298 (1st Cir.1986) (employees entitled to "representation not debilitated by hostility ...". It is questionable whether substantial animosity did exist in this case. Assuming it did, the plaintiffs bring no evidence to show that these feelings had any significant effect on the outcome of the grievance procedure. Nor do they show how it influenced the Union's decision not to proceed to arbitration. As in *Berrigan*, the linkage between intemperate remarks and distortion of the process is mere "gossamer." *Id.* at 299.

In opposition to *Berrigan*, plaintiffs rely on *Janow v. Schweitzer Div. of Kimberly–Clark*, 503 F.Supp. 973 (D.N.J.1980), which states that "the personal hostility of a union officer *might* be a material factor ..." *Id.* at 981. (Emphasis added). As a general proposition this is true. In *Janow*, however, the decision to proceed to arbitration was to be decided by a vote of Union members, in accordance with that Union's collective bargaining agreement. Only twenty of a total of approximately 450 members were at the meeting in which the vote was to be taken, with only seventeen actually voting. Prior to this vote, Union officials announced the Executive Board's desire not to arbitrate, without explaining why. In *Janow*, the almost absurd plebiscite and the active manipulation of Union officials manifestly undermined the integrity of the process. These rather extraordinary factors are not present here.

█ Moreover, failure of the Union to provide information on the *status* of a grievance is not indicative of arbitrary behavior in the processing of the grievance itself. In other words, refusal on the part of the Union to contact plaintiffs or their attorney does not suggest that procedures employed in the grievance process itself were either perfunctory or "materially deficient." Lack of communication, without more, is insufficient to evidence arbitrary or capricious processing of a claim.

█ Plaintiffs' counsel at oral argument suggested that failure to take their grievance to arbitration was evidence of arbitrary processing of their claim. It is well established that an individual employee has no absolute right to have his grievance taken to arbitration unless this step is required by the applicable collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 917, 17 L.Ed.2d 842 (1967). Plaintiffs had no right under their collective bargaining agreement to demand arbitration.

█ Moreover, a union is not arbitrary or capricious in processing a claim short of the step of arbitration, and a decision not to arbitrate is not in itself a breach of fair representation. *Williams v. Sea–Land Corp.*, 844 F.2d 17, 19 (1st Cir.1988); *Berrigan v. Greyhound Lines, Inc.*, 782 F.2d 295, 298 (1st Cir.1986); *Robbins v. George W. Prescott Publishing Co.*, 614 F.2d 3, 4 (1st Cir.1980).

Importantly, as noted above, the decision of the Union not to press the grievance to arbitration was made after a consultation with consul which apprised them of the possible risks of such a move. Such consultation is strong evidence of good faith on the part of the Union. No contrary evidence is to be found on the record.

In fact, the Union's decision not to retain the two plaintiffs based on their position as stewards was well supported by prevailing authority. As *Gulton Electro–Voice, Inc.*, 266 NLRB 406 (1983), enf'd sub nom. *Electrical Workers Local 900 v. NLRB*, 727 F.2d 1184, 1189 (D.C.Cir.1984), demonstrates, layoff and recall superseniority is permitted only for Union officials who are *actually needed* to administer the collective bargaining agreement. Here, the Union wisely recognized a difficulty in justifying the need for *four* stewards to administer the collective bargaining agreement and protect the rights of the five other members of a nine-person clean-up crew. The

decision not to arbitrate this point was well founded, not arbitrary, capricious or perfunctory.

■ At oral argument plaintiffs' counsel cited *Hughes v. International Brotherhood of Teamsters*, 554 F.2d 365 (9th Cir. 1977), for the proposition that summary judgment is inappropriate where a claim of conspiracy by the Union officials against the plaintiffs is proffered. Unlike *Hughes*, however, the plaintiffs here have submitted no significant evidence of a pattern of past behavior by the Union from which a conspiracy could reasonably be inferred.

■ Plaintiffs cite, as an example of Union animosity, the October 29, 1990 letter to the Berkshire Eagle by the Union Sergeant–At–Arms. There is no evidence in the record, however, to implicate the Sergeant–At–Arms as a participant in the grievance procedure, much less a showing that his animosity affected the processing of the grievance.

■ Plaintiffs contend that the conspiracy against them is evidenced, in part, by the occasion when the Union treasurer was unable to locate their grievance in the files (Reed Aff. ¶ 14) and by the offer of Pisani only to photocopy parts of the collective bargaining agreement instead of giving Reed a complete copy. Plaintiffs' Memorandum in Opposition to Summary Judgment at 6.

This is grasping at straws. Even taken in conjunction with the slight disagreement between Union affidavits as to exactly who was in attendance at the September 18, 1990 meeting, and exactly what passed between Tracy and Pisani on their encounter of September 11, 1990, these scraps of evidence simply do not make a quilt. No reasonable factfinder could infer a conspiracy on this record. Beyond this, even accepting some discourtesy or hostility, *no* evidence exists that these factors affected the outcome of the grievance process in any way. In short, the record simply does not support a finding of any breach of the duty of fair representation.

Because there is no genuine issue as to unfair representation, summary judgment is also appropriate in favor of the employer, G.E. *Vaca v. Sipes*, 386 U.S. at 187, 192–94, 87 S.Ct. at 917–19.[5]

### IV. CONCLUSION.

Plaintiffs' sincere indignation at the offhand way they feel they were treated, and counsel's vigorous and imaginative efforts to knit the evidence into a § 301 claim are insufficient as a matter of law. For the reasons set forth above, this court must allow the motion for summary judgment of each defendant. A separate order will issue.

---

5. Defendant G.E. also points out that plaintiffs are precluded from bringing suit against them as employer until they have exhausted their contractual remedies. This is correct. A plaintiff must exhaust all procedures set forth in their collective bargaining agreement before bring suit against an employer. *Vaca v. Sipes*, 386 U.S. 171, 184–86, 87 S.Ct. 903, 913–15, 17 L.Ed.2d 842 (1967).